## ARTHUR A. SMITH

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS, on the relation of DAVID H. FRISBIE.

ELIGIBILITY TO OFFICE — *loss of residence.* On information in the nature of *quo warranto* to test the eligibility of a party to hold the office of judge; *held*, that a conditional removal from this to another State, does not render the party upon return ineligible to the office of judge, under the 11th section of article 5, of our Constitution.

APPEAL from the Circuit Court of Bureau county; the Hon. E. S. LELAND, Judge, presiding.

This was an information in the nature of a *quo warranto*, by James A. McKenzie, State's attorney for the tenth judicial circuit, on the relation of David H. Frisbie, of Knox county, against Arthur A. Smith, judge of said tenth judicial circuit.

The first count of the information charges that on the 19th day of February, 1867, Arthur A. Smith, at the county of Knox, unlawfully usurped the office of judge of the tenth judicial circuit, and did then and there enter upon and exercise the duties and powers of the office of judge, and enjoy the privileges and immunities of said office, to the great injury of the relator

and other citizens of Knox county, and said tenth judicial circuit. The second count charges substantially the same as the first, with the addition that on the 19th day of February, 1867, Arthur A. Smith unlawfully usurped the office of judge "well knowing that he had not been a resident of the State of Illinois for the term of five years next preceding said 19th day of February, 1867, and next preceding the date of the filing of this information." It was stipulated on the part of the State's attorney and appellant, that the information might be presented at the March Term, A. D. 1867, of the Bureau Circuit Court; that no special pleas need be filed; that any and all legal defenses might be made without pleas; that the only point at issue should be whether or not appellant had been for the last five years a resident of this State.

That no question should be raised as to the fact that the governor, under the power vested in him by law, did commission appellant as judge of the tenth judicial circuit aforesaid, on the 19th day of February, 1867, and that he took the oath of office required by law, the only question in the case being that of residence. It was further stipulated that either party might use the affidavits of persons who would be competent to be sworn as witnesses in the cause, and that such affidavits should be entitled to the same weight as though the persons making them had sworn to the same matter in open court.

To maintain the issues on his part, appellant proved by John Becker, that he was a citizen of Knox county, Illinois; that he had known appellant in Knox county for the last twenty years; that he had frequent conversations with appellant after his return from the army in July, 1865, and before his return to Tennessee in August of that year; that he and appellant had discussed the question whether it would be possible for a northern man to live south; that witness had visited Tennessee where appellant was stationed during the war; that he was pleased with the country and climate, but had doubts about the temper of the people. Witness had some notion of removing to Tennessee himself, and freqently discussed the propriety of the step with appellant after his return from the army; that

appellant always stated to him that his return to Tennessee would be an experiment; that he thought there would be a good opening to make money there for a year or two after the close of the war, and while the military occupied the country; and that, if society should become settled so that the life and property of a northern man would be safe there, he might purchase property and make it his home; that it was arranged between witness and appellant that appellant should go south and try the experiment of living there, and if he should become satisfied, after remaining there a reasonable time, that a northern man could live there unmolested and in peace, he was instructed to purchase property for witness, in or near Clarksville, Tennessee, with a view to witness' removal to that place; that appellant had not been gone more than a month before he informed witness by letter that he was satisfied that he could not live in safety in Tennessee, and that he intended to return to Illinois as soon as he could close up his business; that appellant did return to Galesburg, Illinois, where he had resided before the war and has resided ever since; that appellant returned about the middle of March, A. D. 1866. Appellant then proved by Elias Benner, a citizen of Knox county, Illinois, that he had known appellant in said county for the last twelve years; that appellant entered the military service of the United States in the month of August, 1862, and was absent from Illinois, in said service, nearly three years, returning to his home in said county in July, 1865; that appellant was stationed a part of the time, during the military service aforesaid, at Clarksville, Tennessee, and while there stationed had his family with him, and that his family returned to Illinois with him, when he was mustered out of service in July, 1865.

That soon after appellant's return he told witness, that his business relations had been broken up by his absence in the army, and that, as there was a prospect that business would be very dull in the north for some time after the close of the war, he had decided to go back to Tennessee, where he had been in command, and engage in the claim and law business for a time, and if he found it safe for him to live there, he

might buy property and make it his home; but if he found it otherwise, he should return to Illinois.

That in the month of August, 1865, appellant did go with his family to Clarksville, Tennessee; that previous to his departure, appellant sold a part of his household goods and left the remainder in witness' possession for safe keeping; that appellant rented his dwelling-house, and authorized witness to collect the rent; that witness acted as agent of appellant, both while he was in the army and during his second absence in Tennessee, appellant being the son-in-law of witness.

That appellant had not been absent, as aforesaid, more than a month, when he wrote witness, that he had tried the experiment of living south, and found, that he could not safely make it his home on account of the unsettled state of society and the hostility of the citizens against him, and that he had determined to return to Illinois as soon as he could close up his business and as soon as the river was navigable, it being then so low that boats could not run; that appellant did return to Galesburg, Knox county, Illinois, with his family, in the month of March, A. D. 1866, where he has since resided and now resides.

Appellant next proved, by Wm. A. Peffer, of Clarksville, Tennessee, that he was the partner and particular friend of appellant in the latter part of A. D. 1865, and the first part of A. D. 1866, at Clarksville, Tennessee.

That he frequently conversed with appellant, prior to the partnership, about his coming to Tennessee. Appellant was not then satisfied of the propriety of the move, and expressed doubt of his ability to make a permanent residence profitable.

When he did come, in 1865, appellant told witness, that his removal was merely "an experiment;" that he could not decide to remain permanently until he was satisfied it would be best; that he had left Illinois with that view, and his stay in Tennessee would depend entirely on his getting along well with the people.

A short time after appellant's arrival in Tennessee, developments were made which caused witness to remark to him, that

he would not remain long. His reply was, in substance, "I will try a little longer."

Early in October, 1865, appellant, in a confidential conversation, told witness that he had made up his mind to go back to Illinois, and he regretted that he had sold his property there, instead of renting it. Henceforward it was understood, that appellant was to return, and he proposed to sell witness his interest in their business. Witness would not purchase, and appellant decided to wait a month or two and see if they would realize something from their business with the government. Appellant often said, that whenever he was sure the river was open, or would remain open long enough, he would leave instanter.

Witness believes, that appellant had not been in Clarksville more than two months before he was satisfied with his experiment of living in Tennessee, and had fully determined to return to Illinois.

Appellant had frequent application to purchase property, but refused, for the reason that he did not intend to remain. He did not tell the people his reasons, but did tell witness.

An election was held while appellant was in Tennessee. Witness asked him to vote for his favorite candidate. Appellant told witness that he did not want to do any act that would in any way deprive him of his citizenship in Illinois for he had never relinquished it. Appellant would have left Tennessee as early as November, 1865, if witness would have purchased his interest in their business. In October, 1865, appellant told witness, that as he did not intend to remain, he would withdraw from the partnership if witness desired it. Witness is confident that appellant never had a fixed determination to make Tennessee his home; that his removal was an experiment, and that it required only about two months to test it.

Appellant then offered to read in evidence his own affidavit, to which the State's attorney objected, on the ground that this was a criminal proceeding, but the court permitted the affidavit of appellant to be read, but did not consider the same in making up his judgment, to which appellant excepted.

The people proved: First, by M. M. Clark, that appellant was a resident of Galesburg, Knox county, Illinois, about the last of August, A. D. 1865, and had been a resident of that place for more than ten years prior to that date. That about the date mentioned he removed with his family to the State of Tennessee, and returned with his family to Galesburg about the middle of March, A. D. 1866, where he has since resided. That while appellant was preparing to remove to Tennessee, he told witness that he would not sell his Illinois Reports, giving as a reason that he might return in a short time.

Appellant told witness that he was going to Clarksville, Tennessee, to open an office; that he did not know whether he would remain there or not. It depended on circumstances. It was an experiment and might fail. Second, by James A. McKenzie, that he had known appellant as a resident of Knox county, Illinois, for nine years previous to August, A. D. 1865. That, about the date named, appellant removed from the city of Galesburg, where he had before that time resided. Appellant informed witness that it was his intention to go to Clarksville, Tennessee.

Witness afterward received letters from appellant dated at that place. Appellant told witness that he was going to Clarksville, to open a law office; that he thought he could do better there than in Galesburg.

The court gave judgment *pro forma* against the defendant, who appealed therefrom.

Messrs. T. G. FROST and E. P. WILLIAMS, for the appellant.

Did appellant lose his residence by going to Tennessee the last of August, 1865, and returning to Illinois in the middle of March, 1866?

This is a question of intention, from all the facts and circumstances in each case. *Kitchell* v. *Burgwin et ux.*, 21 Ill. 44; *Ives* v. *Mills*, 37 id. 75; *Walters* v. *The People*, 21 id. 178; *Walters* v. *The People*, 31 id. 174. A person may have his domicile in one place and his residence in another. *Butler* v. *City of New York*, 5 Sandf. 44.

A domicile once acquired is presumed to continue until a new one is obtained *facto et animo*. *Glover* v. *Glover*, 18 Ala. 365.

Unless one's change of domicile is complete and final, it does not constitute an abandonment of one's country. *Hardy* v. *De Leon*, 5 Texas, 211; *Brown* v. *Smith*, 11 Eng. Law and Eq. 6; *Leach* v. *Pillsbury*, 15 N. H. 137.

When a domicile has been once obtained, it will not be lost by a temporary absence, with the intention to return. *The State* v. *Judge*, 13 Ala. 805.

Every person has a domicile of origin, which he retains until he acquires another, and the one thus acquired is in like manner retained. *Thorndike* v. *The City of Boston*, 1 Metc. 242; *Kilburn* v. *Bennett*, 3 id. 199.

If a person goes out of the State, county or town, for a particular purpose, and does not take up a permanent residence elsewhere, he cannot be considered as having removed from the State, county or town, so as to affect his domicile and inhabitancy. *Sears* v. *City of Boston*, 1 Metc. 250; *Sacket's case*, 1 Mass. 58; *Abington* v. *Boston*, 4 id. 312, 556; 7 id. 1; 11 id. 350, 424; 5 Pick. 370.

A man's domicile is not changed by an absence for a temporary purpose, with or without his family. *Cadwalader* v. *Howell*, 3 Harr. 138.

There must be intention and act united to effect a change of domicile. *Sumerville* v. *Sumerville*, 5 Vesey, 750.

A person's home or domicile is his habitation, fixed in any place, without any present intention of removing therefrom. *Putnam* v. *Johnson*, 10 Mass. 488.

A domicile, once fixed, will continue, notwithstanding the absence of the party, until a new domicile is acquired. *Jennison* v. *Hapgood*, 10 Pick. 77.

The domicile is not affected by the formation of an intention to remove, unless such intention is carried into effect. *Hallowell* v. *Saco*, 5 Greenl. 143.

A domicile may be defined " a residence at a particular place, accompanied with positive or presumptive proof of continuing

it an unlimited time;" and is a conclusion of law on an extended view of facts and circumstances. *Grier* v. *O'Daniel*, 1 Binn. 352.

A resident is a person coming into a place with an intention to establish his domicile or permanent residence, and actually executing that intention by taking a home or lodging, opening a store, or the like. *United States* v. *The Penelope*, 2 Peters Adm. Dec. 450.

Residence is a question of intention. By a removal out of the State, without an intention permanently to reside elsewhere, a person will not lose his residence, nor will he acquire it by a mere intention to remove permanently, not followed by actual removal. *Casey's case*, 1 Ash. 126.

The existing domicile always continues until another is acquired, so that by the acquisition of another the former is relinquished.

To effect a change of domicile there must be intention and act united. 2 Kent Com. 43; 15 La. An. 281; *Crawford* v. *Wilson*, 4 Barb. 504.

To effect a change of residence, it is not enough that one intends to change it, and believes he has done in law what amounts to a change.

The intent and fact must concur, and his opinion cannot produce the result. *Chaine* v. *Wilson*, 8 Abbott's Pr. 78.

Mr. J. A. McKENZIE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an information in the nature of a *quo warranto* exhibited against appellant, charging that he had usurped the office of judge of the tenth judicial circuit. The only question presented, and which we are called upon to determine, is, whether, under the eleventh section of article five of our Constitution, he was eligible to the place. That section requires, as a qualification for that office, that the person shall have been a

resident of the State for at least five years next preceding his election or appointment.

It appears from the evidence, that appellant went to Tennessee with his family in the month of August, 1865, and returned to Illinois in March, 1866, where he had resided for many years previously. Before he left this State, and for a short period after his arrival in Tennessee, he frequently declared, that it was only an experiment. That if he found that the feelings of the people there were such that he could remain with satisfaction he would not return, but if he found that he could not, then he would return to Illinois. But he was there but a short time until he became satisfied that he could not remain with satisfaction to himself, and informed his partner that he would return to Illinois as soon as the river became navigable, and this seems to have been his fixed determination until it was carried out by his return. So far as the evidence discloses, he at no time expressed an unqualified intention to remain in Tennessee. It was at all times expressed conditionally. And when he was requested by his partner in Tennessee, to vote at an election, he declined, upon the ground that he desired to do no act by which he would lose his citizenship in this State.

Before leaving he refused to sell his Illinois Reports, saying, that he would probably return, and would then need them in his practice. He only rented his residence when he left. And against this is the fact, that he was in Tennessee in the practice, some six months, having his family with him, perhaps as much as two months immediately after his arrival there undetermined whether he would remain, and the remainder of the time fully determined to return to this State. This is, we think, the extent of the proof.

This is a proceeding in the nature of a criminal information, and before it can be maintained, the proof must be clear and satisfactory that the party is disqualified. In this case we find appellant has been appointed judge of the tenth judicial circuit, by the executive branch of the government, and holding a commission regular and apparently legal. This must necessarily raise a presumption of right to the office, and that pre-

sumption must be overcome by satisfactory evidence before the incumbent can be ousted.   In this case, we think the evidence, at most, leaves the question, whether he had lost his residence in this State, one of doubt.   It does not appear that he ever intended to abandon his residence here; but, on the contrary, during all but a short period of time he expressed a determination to return, and for that short period he only seemed to have been in a state of doubt.   We think, that, when the residence is lost, it is by a union of intention and acts; but the intention in many cases will be inferred from the surrounding circumstances.   In this case, however, we do not think all of the circumstances appearing in evidence establish a presumption of loss of residence sufficient to overcome the presumption arising from the fact, that the governor gave him the commission under which he is now acting.

The judgment of the court below, which was entered *pro forma*, is reversed and the cause remanded.

*Judgment reversed.*

BREESE, J. (dissenting).   The proof is positive that appellant resided with his family in Clarksville, Tennessee, from August, 1865, to March, 1866, when he returned to this State.   At Clarksville he opened an office, and remained there so long as his professional prospects encouraged him.   With all my desire to do so, I cannot say he was not a resident of Tennessee during all that time.   That State was his then fixed residence. Being a resident of Tennessee, it is impossible he could be a resident of this State at the same time.   I therefore cannot concur in the opinion of the majority of the court.