Syllabus.

THE CITY OF BEARDSTOWN *et al.*

*v.*

THE CITY OF VIRGINIA *et al.*

| 81 | 541 |
|---|---|
| 125 | 174 |
| 125 | 196 |
| 125 | 198 |
| 81 | 541 |
| 162 | 286 |

| 81 | | 541 |
|---|---|---|
| 189 | ⁶ | 44 |
| 189 | ⁷ | 45 |
| 189 | ⁸ | 46 |
| 189 | ⁸ | 47 |

| 81 | | 541 |
|---|---|---|
| 197 | ⁸ | 47 |

1. FORMER DECISION—*overruled.* The decision in *Knox County* v. *Davis*, 63 Ill. 405, holding that the county courts, under the constitution of 1848, had no jurisdiction to naturalize foreigners, is overruled by the case of *The People ex rel.* v. *McGowan*, 77 Ill. 644.

2. NATURALIZATION—*by what courts.* The county courts of this State, under the constitution of 1848, and the St. Louis Criminal Court, had jurisdiction to naturalize persons of foreign birth. The same may be said of the probate courts of Ohio.

3. SAME—*parol evidence to show to whom issued.* Where a certificate of naturalization recites the person as Patrick W. Doran, whose real name is Patrick Peter William Doran, he may prove, by his own oath, that it was issued to him, and that he is the person naturalized thereby. •

4. PLEADING AND EVIDENCE—*mistake in voting double ballot.* Where, on a contest of an election for the removal of a county seat, the bill alleges that a majority of the legal votes cast at said election were not for removal, but against it, and the answer denies this allegation, evidence is admissible to show that a person voting two ballots instead of one, did so by mistake, and thus have the same counted.

5. EVIDENCE—*certificate of clerks.* The certificates of the clerks of the county and circuit courts, to the effect that there is no evidence on the records of their courts that certain persons had been naturalized therein, are not competent evidence to disprove the fact of naturalization. Any person who has examined an official record may swear and prove that a matter is not of record.

6. ELECTION—*evidence to rebut the presumption of person's right to vote.* Where a person, having voted at an election, testifies that he is of foreign birth, that he has never been naturalized, and does not know that his father had been, this will be sufficient to rebut the presumption of the legality of the vote, arising from its acceptance by the judges of election.

7. SAME—*burden of proof in respect to a person being a voter.* On the contest of an election for the removal of a county seat, where voters not voting are to be counted as against removal, no presumption can be indulged in favor of persons not voting, but to count them against removal, the party claiming the vote must clearly show they were legal voters.

8. SAME—*residence—whether lost by removal.* Where a person, about two months before an election, sells out his property and starts, with his family, for Texas, with the intention of locating there if he can find a place to suit

him, but upon arriving there he returns, without unloading his goods, to his former election precinct, he will not thereby lose his residence and right to vote. So, if a person, in April, moves, with his family, to the State of Ohio, where he remains a little over six months, renting and keeping house there about two months, and then returns in October of the same year, and he swears that it was not his intention to go to Ohio permanently, he will not lose his former residence, under the Election Law.

9. SAME—*declarations of voter as to his right to vote.* The declarations of a person, made some time after having voted at an election, admitting or stating facts showing he was not a legal voter, are inadmissible as evidence to show his disqualification to vote. But where the person, when sought after to vote, stated that he was alien born, and had no right to vote, and immediately after the election stated the same thing, such declarations may be shown as a part of the *res gestæ.*

APPEAL from the Circuit Court of Cass county; the Hon. LYMAN LACEY, Judge, presiding.

This was a contest of an election, by bill in chancery, between the cities of Beardstown and Virginia, respecting the removal of the county seat. The case was submitted, and decided by this court at the January term, 1875, and is reported in 76 Ill. 34, where the facts are more fully stated. A rehearing having been granted, the following opinion was filed.

Messrs. HAY, GREENE & LITTLER, Mr. A. THORNTON, Mr. I. J. KETCHAM, Messrs. GARLAND & POLLARD, and Mr. THOS. H. CARTER, for the appellants.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, Mr. C. G. WILNEY. Mr. J. N. GRIDLEY, and Mr. ISAAC L. MORRISON, for the appellees.

Per CURIAM: A rehearing was granted in this case, and a re-argument has been had. We have reviewed the legal questions involved in our former decision, after the further discussion of them in the additional and able arguments with which we have been favored.

Upon full consideration, we have to say, that the majority of the court find no sufficient reason to depart from the legal conclusions which we before reached, and we still adhere to them.

This, however, with one exception.    By our former decision, it was held that the court below rightly refused to count, in favor of appellants, the votes of ten persons alien born, who were minors at the time their fathers obtained certificates of naturalization from the former county courts in this State, organized under the constitution of 1848, following in that respect the decision in the case of *Knox County* v. *Davis*, 63 Ill. 405, that said county courts had no jurisdiction to grant naturalization.

Since the former decision in this suit, this court has expressly overruled, in this respect, the case of *Knox County* v. *Davis*, *supra*, in the case of *The People ex rel.* v. *McGowan*, 77 Ill. 644, holding that said county courts had jurisdiction to grant naturalization.    These ten votes, then, under the decision in the last case, should have been counted in favor of appellants, as also the two other votes, of Charles Thilenius, a voter against removal, rejected because the naturalization of his father was in the St. Louis Criminal Court, and Arthur W. Loosely, a voter who did not vote, whom the court refused to count as a voter because his father was naturalized in the county court, in all, twelve votes.    From these should be deducted the four votes in favor of removal, which were rejected by the court below, of John Hobig and Peter Doran, naturalized in the St. Louis Criminal Court, Michael Dowling, naturalized in the county court, and George Klopfer, naturalized in the Probate Court of Seneca county, Ohio, all whom were duly naturalized according to the doctrine laid down in the *McGowan* case.

As to Doran, however, appellants claim that his rejection was not on the ground the court had not authority to naturalize, but that his rejection was proper for the reason that the certificate of naturalization produced by him was issued to another person.    His name, he testifies, is Patrick Peter William Doran.    The certificate is to Patrick W. Doran, and there appears some discrepancy in his statement as to his being of full age at the date of the certificate.    We think, however, from his evidence, the certificate should be taken as having

issued to him. Thus, then, of the number of votes standing affected by the decision in the *McGowan case*, there is a majority of eight in favor of appellants, entitling them in the count to eight additional votes, and that being the majority found by the court below against them, makes, upon the whole count, as so far considered, a tie vote. This renders it necessary, as was not done in the former opinion, to go into a review of the several alleged erroneous rulings of the court below on both sides, in matters of fact, in admitting and rejecting individual votes, in order to determine where lies the legal majority.

The two voters, C. M. Easum and William Mains, voted for removal, and the vote of neither was counted by the judges of election, because, by mistake, two ballots were placed in the box by each, instead of one by each. These votes, upon satisfactory evidence there produced, were, by the court below, allowed and counted for removal, and erroneously so, it is insisted by appellants, because there was no sufficient allegation in that behalf in the pleadings; that the votes were allowed on the evidence alone, without any thing in the pleadings to sustain the finding.

The bill alleges "that a majority of the legal votes cast at said election were not for removal, but against it." The answer denies this allegation. Under such allegation and denial, we regard the evidence as properly admitted.

In the case of several foreign born persons, they testify that they had been naturalized, or their fathers had been when they were minors. In contradiction of the testimony of the witnesses, there were offered and received in evidence the certificates of the clerks of the circuit and county courts in which the witnesses testified that certificates of naturalization had been taken out, or of the counties in which the party claiming to have been naturalized had resided since arriving in the country, to the effect that there was no evidence on the records of their courts that such persons had been naturalized therein. It is insisted by appellants that these certificates were not competent evidence, and their admission erroneous.

In the case of *Cross* v. *Pinckneyville Mill Co.* 17 Ill. 54, where a certificate of the Secretary of State had been introduced in evidence, that, on a certain date, or prior thereto, no certificate of organization of the company had been filed in his office, SCATES, Ch. J., in reference thereto, said: " I deem it a misapprehension of the true object of such a certificate, when offered to prove what is not of record, or that this certificate is not of record. Any person who has examined offices or records may swear and so prove the matters as not there of record." If this be accepted as a correct statement of the law, these certificates were incompetent evidence.

Appellants claim that six votes against removal, viz: those of William Lovekamp, Henry Lovekamp, John F. Nolte, William Jockish, F. W. Meyer, and Henry Schneider, and one for removal, that of Charles Fink, rejected by the court below, depend upon the decision of this question.

We have examined the evidence pertaining to each one of the above named six votes against removal, and find that, in the case of only two of the voters, Jockish and Meyer, was the certificate material for their rejection.

The Lovekamps and Nolte testified that they were foreign born; that they had never been naturalized, and did not know that their fathers had been. Schneider testified that he was foreign born, and had no naturalization papers to show, and testified further to taking out his first papers, but not to taking out any other. We are of opinion the evidence rebutted the presumption of the legality of the votes, and that their rejection was not dependent upon the certificates.

It is otherwise as to Jockish and Meyer. Deducting from these two against removal, Charles Fink, for removal, admitted by appellants to have been erroneously rejected upon the certificate, leaves a balance of but one vote denied to appellants on account of this ruling in the admission of certificates. We will call this, for convenience of after reference, the vote of F. W. Meyer.

The court below, after having counted as voting against removal, 149 persons who did not vote, but whom the court

35—81ST ILL.

found to be voters in the county on November 12, 1872, the day of the election, erred, appellants insist, in refusing to count certain other named persons, who did not vote, as voters of the county, and so as against removal, 32 votes in all.

The question involved in most of these cases is that of the residence of the voter, one which often it is quite difficult to determine, and may be found either way without doing any marked violence to principle or the facts. A different rule of presumption, too, applies with respect to these alleged voters, than in regard to the persons who actually voted. All legal voters who did not vote, being counted as against removal, whether in truth they were so or not, there is no presumption to be indulged in their favor, but in order to count them against removal, the burden is upon appellants to show clearly that they were legal voters. One of this number, Arthur W. Looseley, rejected because of the naturalization of his father in the county court, we have already allowed and counted against removal. We have gone through the evidence pertaining to all the other cases, and in view of it, we can not say that it so clearly appeared the persons were legal voters, that the finding of the court that they were not, should be reversed, except in the cases of David Black, Richard Eyre, Jerry Gentry, C. M. Lane and Charles Wilbur. We are of opinion these persons were entitled to vote upon the question, and that they should have been counted as against removal.

Appellants insist that the votes of 13 named persons, who voted "against removal," were erroneously rejected by the court below. From an examination of the evidence, we find that two of these votes, and only two, to-wit: those of John O'Neal and Albert Ritscher, were erroneously rejected. We think they should have been counted against removal.

Appellants claim that the votes of 16 named persons, who voted "for removal," were erroneously allowed and counted for removal. We find, from the evidence, this to be the case with regard to five, and no more, of such persons, to-wit: C. M. Palmer, John Roberts, James Thompson, W. H. Thompson and John

Fuqua. We are of opinion they were not legal voters, and that their votes should not have been counted in favor of removal.

On the part of the appellees, it is contended that, from the list of 149 persons who did not vote at the election, whom the court allowed and counted against removal, there should be stricken the names of 21 named persons, as not having been shown to be legal voters. From an examination of the evidence, we find one of those so named whom we regard was so erroneously allowed and counted against removal, to wit: George W. Crum. He testified that, on November 12, 1872, the day of the election, he resided in St. Louis; that he went there October 10, 1872, and had lived there ever since; that, before going to St. Louis, his home was in Michigan; that he never voted in Cass county. He was not a legal voter.

Appellees claim that, of the number of voters counted by the court against removal, there were ten, naming them, who should not have been so counted. Of these, we think the evidence shows that Jacob Zohn did not have a six months' residence in Cass county next preceding the county seat election.

As to John Hess, he testifies that he was of foreign birth; never naturalized; came to this State in 1858, and only thinks his father was naturalized before witness came to the country.

As to Albert Rhea, we think the facts appearing from his testimony show that he did not have the six months' permanent residence in Cass county necessary to entitle him to vote.

George Baker and Arnold Neiderer both testify that they were of foreign birth; that they never were naturalized, and did not know that their fathers were.

Michael Devlin testified he was foreign born, never naturalized, and only his mother told him that his father was a citizen of the United States.

We are of opinion that the votes of these six named persons should not have been counted; that the *prima facie* presumption in favor of the legality of the votes of Hess, Baker, Neiderer and Devlin, arising from the fact of the votes having been received, was rebutted by the evidence.

Of the votes given for removal, but rejected by the court,

appellees insist that 15 of them, naming the voters, were erroneously rejected, and should have been counted for removal. Of this number, the vote of George W. Montgomery seems to have been rejected on the ground of non-residence in Virginia precinct 90 days next preceding the election. It appears that, in September, 1872, he went, with his wife, into another precinct, to stay two weeks, for only a temporary purpose. His residence clearly appears to have been all the while in Virginia precinct until after the election.

The vote of Allen C. Robinson seems to have been rejected on the ground of his not being a resident of the State. In September, 1872, the testimony shows he sold out and started, with his family, from his place of residence, in Chandlerville precinct, in Cass county, in this State, for Texas, with the intention of locating there, if he could find a place to suit him; that, upon arriving in Texas, he turned back without unloading his goods, and returned to Chandlerville precinct, having been absent only 28 days, and remained in Chandlerville precinct until in the spring of 1873, when he removed to Kansas. We think he had not lost his residence in Chandlerville precinct at the date of the election, November 12, 1872. See *Smith* v. *The People,* 44 Ill. 16.

The vote of Jesse Rowe seems to have been rejected for the want of six months' residence in the county before the election. The evidence, we think, clearly shows a six months' residence.

In the case of James M. Rodney, he testified that he moved from Virginia precinct, with his family, to Ohio, the 17th of April, 1872, and was there a little over six months, renting a house and keeping house there two months, and returned to Virginia precinct in October, 1872; that it was not his intention to go to Ohio permanently; that he intended, when he left, to return to Virginia precinct. We think his residence in Virginia precinct had not been lost, the ground on which his vote must have been rejected, and that his vote should have been counted.

The vote of William Maxwell, for removal, must have been rejected for supposed non-residence, but the testimony is insuf-

ficient to overcome the presumption in favor of his right to vote, from his having voted. It does not negative the presumption that he had permanently resided one year in the State, six months in the county, and 90 days in the precinct, next before the election.

In respect of five of the cases under this head, there is presented the question of the admissibility of the declarations of voters to show their disqualification to vote, where the fact of how they voted is made to appear by other testimony. As stated in the former opinion, it is the practice of legislative bodies, in election contests, to admit such declarations to more or less extent. There is but little judicial authority on the subject, and that conflicting. *The People* v. *Pease,* 27 N. Y. 45, and *State* v. *Olin,* 23 Wis. 311, are authorities in favor of, and *Gilliland* v. *Schuyler,* 9 Kans. 569, against their admission. Under the state of the authorities on the subject, we will not commit ourselves to any absolute rule of admission or rejection of such declarations further than may be necessary for the decision of the present case.

As regards two of these persons, whose declarations of disqualification were received, and their votes for removal rejected thereon, Floyd G. Williams and Gottlieb Weller, the former resided in Christian county, in this State. In June, 1874, while the testimony was being taken in this case by the commissioner, the witness, King, went to see Williams, to have him come and give his testimony. Williams told the witness he could not come, and then went on and gave to the witness a recital of facts showing that he was not a legal voter at the election. Weller, in June, 1874, came to the place where the commissioner was sitting to take testimony, to be examined as a witness, but the commissioner was absent. Weller then told the witness he was going to Springfield, in this State, and would not be back again, and made a statement of facts to the witness, showing he was not a legal voter at the election. We can not think that, on any sound principle, such declarations, in such circumstances, are admissible in evidence to show the disqualification of the voter.

As to Albert Davis and Richard Wallace, they made statements after the election—Davis in June, 1874, a long time after the commencement of the suit, and Wallace after the commencement of the suit, as we understand—which showed they were not legal voters at the time of the election.  It appeared that they had left, and the witness did not know where they were.  Although these declarations of Davis and Wallace were made under less objectionable circumstances for their reception than those in the cases of Williams and Weller, we are inclined to hold them to have been inadmissible.

As to John Gallaher, he was alien born, and stated, after the election, that he had no right to vote; had no naturalization papers; and, before he voted, he stated to the witness, who went after him to get him to come and vote, that he had no right to vote.  We think that here the declaration of the voter was admissible.  It was, in the last instance, perhaps, so contemporaneous with the voting as to be not improperly receivable as a part of the *res gestæ*.

Of these five votes, then, for removal, rejected on the proven declarations of the voters, of their disqualification, we find that those of Williams, Weller, Davis and Wallace were erroneously rejected, making, with those rejected on other grounds as above mentioned, nine votes for removal wrongly rejected, and which should have been counted for removal.

This review of the rulings of the court in the admission and rejection of individual votes, finds there to have been 14 erroneous rulings adverse to appellants, and 17 adverse to appellees.  To particularize—starting with the count of the votes on the respective sides, as made even by the re-adjustment of the vote in conformity with the doctrine of the *McGowan* case, then, upon the review of the other findings of the court in admitting and rejecting individual votes, we find there should have been allowed and counted for appellants the additional votes against removal, which were wrongly rejected, of F. W. Meyer, David Black, Richard Eyre, Jerry Gentry, C. M. Lane, Charles Wilbur, John O'Neal and Albert Ritscher, eight in all, from which there should be deducted the seven

votes against removal, wrongly allowed, of George W. Crum, Jacob Zohn, John Hess, Albert Rhea, George Baker, Michael Devlin and Arnold Neiderer, giving to appellants a net increase of one vote.

There should have been allowed and counted for appellees the nine additional votes for removal, which were wrongly rejected, of George W. Montgomery, Allen C. Robinson, Jesse Rowe, James M. Rodney, Floyd G. Williams, Gottlieb Weller, Albert Davis, Richard Wallace and William Maxwell, from which should be deducted the five votes for removal, wrongly allowed, of C. M. Palmer, John Roberts, James Thompson, W. H. Thompson and John W. Fuqua, giving to appellees a net increase of four votes, leaving as the final result of the whole count, a majority still in favor of the appellees of three votes. We, accordingly, arrive at the same conclusion as before, that the decree should be affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAIG: I do not concur with the majority of the court in the decision of this cause.

Mr. JUSTICE DICKEY: I can not concur in the decision in this case.