PROVOSTY, J.
Six separate suits against, as many defendants have been consolidated in this appeal, and have been submitted without brief. The object of the suits is to have the defendants stricken from the registration roll of the parish of Plaquemines for the alleged reason that they are not residents of that parish.
The defendants are bar .pilots; that1 is to say, they pilot vessels in and out to sea at the mouth or me Mississippi river. For discharging these functions they have to be appointed by the Governor of the state and licensed. Their post is at the head of the passes, and they are forbidden by law to leave their post for longer than seven days without a leave of absence from the Governor of the state. The place is called Pilot Town. We gather from the record that it is a sort of village. There is a schoolhouse, and children go to school. The land there, when not covered by water, is too low and marshy to be trod upon. The communication between the houses is by skiff, or on wharves, or elevated plank walks. The locality is additionally undesirable to inhabit from being exposed to storms. As a consequence, the pilots have homes in New Orleans for their wives and children, to which they themselves go whenever off duty. At Pilot Town they live at a boarding house, or home, which they maintain at common expense. How they divide their time between their New Orleans home and Pilot Town is not shown by the evidence, except as appears from the following:
“The pilots sometimes stay one day, sometimes a month, on a station, but more frequently two weeks, and are permitted to be off duty for seven consecutive days.”
The Constitution (article 197, fixing the qualification of voters) provides that the voter must be:
“An actual bona fide resident of this state for two years and of the parish one year and of the precinct in which he offers to vote six months next preceding the election.”
The reason of this requirement is stated in 10 A. & E. E. 596, as follows:
“The Constitutions of nearly all the states of the Union and the laws of nearly all the territories require a residence for a definite period, ranging from 3 months to 2% years, as a prerequisite to the right of suffrage; and they usually require, in addition, a residence for a *882 certain period within the county and voting precinct.
“The purpose of this requirement is to provide a term of educational probation during which the proposed voter may become acquainted with the wants and identified with the interests of the people among whom he proposes to live, and acquire a knowledge of the character and capacity of those who are candidates for office. It, moreover, prevents the colonization of voters within any particular political division.”
In State ex rel. Atty. Gen. v. Steele, 33 La. Ann. 910, this court said:
“A residence is one thing, and a domicile another. A person may have as many residences as he may choose, but cannot have but one real domicile.”
See, also, Succession of Steers, 47 La. Ann. 1551, 18 South. 503.
A separate title of our Civil Code is devoted to the subject “Domicile and the Manner of Changing Same,” and the term “domicile” is one of definite meaning in our law, and may be said to be a technical term; whereas the term “residence” is nowhere defined, and conveys only the general meaning which it possesses in the language; and we think that the word “residence” was used advisedly by the framers of the Constitution, instead of the word “domicile.”
In like manner the registration law uses the word “residence” and “reside,” and not “domicile” or “domiciliated.”
In undertaking to determine, therefore, what will constitute a residence, within the meaning of the Constitution, we must go to the dictionary for the meaning of the word “residence.” We need not transcribe here the definition of the word. Suffice it to say that it does not imply permanency, or the animo manendi, as does the word “domicile.”
That these defendants are residents of Pilot Town, and of no other place, there can be no doubt. They certainly are not residents of New Orleans. Their families are, but not they. Such a thing would be possible as their having never set foot in New Orleans and intending never to do so. The record shows they occasionally visit their families in New Orleans, but not that they reside there.
So far as all the defendants, except Nick Trayanovich, are concerned, they were born in the parish of Plaquemines, and have always lived and voted there, and never elsewhere, and .are not shown to have a domicile elsewhere; and hence the parish of Plaque-mines would have to be held to be, not only their residence, but even their domicile. Where Nick Trayanovich was born, or where-he lived prior to becoming a bar pilot, is not shown. He is not at any rate, shown to have resided elsewhere than in the parish of Plaquemines.
The place where a man’s family lives does not determine his domicile, and still' less his. residence. The domicile of wife and children follows that of the husband, not that of the husband that of wife and children. In the case of State ex rel. Attorney General v. Steele, supra, the fact that the defendant had sold his home in Tensas parish and purchased another in Natchez, Miss., and had removed his family to this new home, was held not to have necessarily had the effect of operating a change of domicile.
Article 208 of the Constitution reads as follows:
“For the purpose of voting, no person shall be deemed to have gained a residence, by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this state or of the United States, or on the high seas, or while a student of any institution of learning.”
Were it not for this article of the Constitution, the fact that the defendants had accepted a life (or during good behavior) term office would of itself have sufficed, under article 45, Rev. Civ. Code, to have established their domicile at Pilot Town. That article reads:
“An acceptance of an office, conferred for life or during good behavior, implies an immediate transfer of the domicile of the officer to the parish in which he is required to exercise his functions. But public officers who perform such *884 duties throughout the state, or in a district composed of several parishes, preserve the domicile they have before their appointment, unless they manifest a contrary intention.”
Although under article 208 of the Constitution the acceptance of an office for life or during good behavior does not of itself operate a change of domicile to the place where the functions of the office are to be exercised, it is nevertheless a circumstance to be taken into consideration in determining the questions of domicile and residence.
The judgments appealed from are set aside, and the plaintiff’s suits are dismissed, with costs in both courts.