#### (114 So. 711)

#### No. 28987.

### MELERINE v. DEMOCRATIC PARISH EXECUTIVE COMMITTEE FOR PARISH OF ST. BERNARD.

#### Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. Elections ⬅126(4)—Democratic parish executive committee may appeal from judgment reversing its decision sustaining objection to candidacy at primary election (Primary Election Law, § 11; Const. 1921, art. 8, § 5).

Where the district court reversed the decision of a Democratic parish executive committee, which had sustained objection to plain-

tiff's candidacy for sheriff at primary election, such committee has right of appeal under Primary Election Law (Act No. 97 of 1922), § 11; Const. 1921, art. 8, § 5, being inapplicable.

2. Elections ⬅126(4)—Decision of Democratic parish executive committee sustaining objection to candidacy for sheriff at primary election is reviewable (Primary Election Law, § 11).

Decision of Democratic parish executive committee, sustaining objection to candidacy of plaintiff for sheriff at primary election, is reviewable by district court under Primary Election Law (Act No. 97 of 1922), § 11.

3. Elections ⬅126(4)—Prospective candidate for sheriff at primary election appealing from parish executive committee's decision sustaining objection to candidacy need not allege facts showing qualification for office (Primary Election Law, § 11).

On appeal to district court from decision of Democratic parish executive committee sustaining objection to candidacy for sheriff at primary election, plaintiff need not allege facts showing qualification to hold office, it being sufficient to allege due filing of application and sustaining of objection to candidacy, since Primary Election Law (Act No. 97 of 1922), § 11, requires objection to be set forth in detail, and court can only review decision of committee.

4. Elections ⬅126(4)—Prospective candidate for sheriff may be "actual bona fide resident" without occupying place of abode within parish every moment during required time.

To be "actual bona fide resident" so as to be qualified as prospective candidate for sheriff at primary election, such person need not have occupied place of abode within parish every moment during required period of time, since question is largely one of intention.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Actual Bona Fide Resident.]

5. Elections ⬅126(4)—Evidence held sufficient to show that prospective candidate for sheriff was "actual bona fide resident" of parish.

Evidence *held* sufficient to show that prospective candidate for sheriff at primary election was "actual bona fide resident" of parish, though he rented house and spent part of time in another parish.

O'Niell, C. J., dissenting.

Appeal from Twenty-Fifth Judicial District Court, Parish of St. Bernard; William

H. Byrnes, Jr., presiding instead of Claude Mereaux, Judge, Recused.

The Democratic Parish Executive Committee for the Parish of St. Bernard sustained an objection to the candidacy of Adam Melerine for sheriff at a primary election, and he appealed to the district court. The district court reversed the decision of the Committee, and it appeals. Motion to dismiss the appeal denied, and judgment affirmed.

Hugh M. Wilkinson, A. Miles Coe, and Fernando Estopinal, all of New Orleans, for plaintiff.

· Prowell, McBride & Ray, Eugene H. Walet, Jr., and Welton P. Mouton, all of New Orleans, for defendants.

ST. PAUL, J. The Democratic parish executive committee for the parish of St. Bernard, defendant herein, called a primary election pursuant to the provisions of Act 97 of 1922, the primary election law, for the purpose of nominating a party candidate for the office of sheriff of St. Bernard parish, and Adam Melerine, plaintiff herein, in due form and in due time, filed notice with the committee of his intention to become a candidate.

One of the members of said committee, in due form and in due time, filed an objection to plaintiff's candidacy on the ground that plaintiff was not a duly qualified elector of the parish of St. Bernard because "Mr. Melerine has no domicile in the parish of St. Bernard, but, on the contrary, maintains a domicile in the parish of Orleans." The committee heard the objection, sustained it, and declared plaintiff disqualified.

Plaintiff then appealed from the decision of the committee to the competent court, to wit, the Twenty-Fifth judicial district court, in and for the parish of St. Bernard. The district court ·reversed the decision of the committee and declared plaintiff duly qualified. The committee thereupon took an appeal to this court.

## I.

[1] Plaintiff moves to ·dismiss the appeal on the ground that appellant has no right of appeal under the Constitution and laws of the state. His contention is: (1) That since under section 11 of the Primary Law, a. decision by the committee in favor of plaintiff's candidacy would have been final, therefore a like decision by the court of first. instance must also be final; (2) that the primary law provides for no appeal when the decision of the committee is reversed; and (3) that the Constitution of 1921, art. 8, § 5, forbids an appeal in such cases.

The constitutional provision relied upon has not the remotest application to contests involving primary election contests, as a mere reading thereof will show. It relates exclusively to contests involving the registration of a voter and the striking from the rolls of a name illegally thereon; wherein, in certain cases, the verdict of·a jury shall be final. As to the proposition that the primary law provides for no appeal when the decision of the committee is reversed, the answer is that section 11 provides that in such cases the procedure shall be the same (as far as practicable) as is provided in section 27, and section 27 provides that in contests over primary elections, *the party cast* in the lower court shall have the right to appeal. As to the first proposition advanced, it is a manifest non sequitur, since the Legislature has provided otherwise as we have just said. The motion to dismiss is without merit.

## II.

[2] Defendant filed an exception to the jurisdiction of the lower court, based (apparently) on the ground that the action of the committee on the objection to plaintiff's candidacy is final and not reviewable by the

courts. Section 11, abovesaid, provides that when the action of the committee is against the objection and favorable to the candidacy, its decision is final; but it expressly provides that where the decision of the committee sustains the objection and is against the candidacy, such decision shall be reviewable by the courts.

### III.

[3] Defendant filed an exception of no cause of action based on the proposition that plaintiff does not allege in his petition facts sufficient to show that he is duly qualified to hold the office to which he aspires. It was not necessary for him to do so; it sufficed for him to allege that he filed his application with the committee in due time and in due form, that his candidacy was objected to, and that said objection was sustained by the committee. For the aforesaid section 11 requires that any objection to a candidate shall set forth "in detail" the reason why said candidate is not qualified; so that the only question before the committee is whether said *objections* be well founded. And since the court can only review the decision of the committee, it follows that any other objections which might have been made, but were not made, are wholly immaterial to the issues before the court. And since new objections cannot be urged before the court which were not set up "in detail" before the committee, it follows that this plaintiff was not called to *anticipate* any such new objections by setting forth in his petition, and later on proving, that he has *all* the qualifications required for the office which he seeks. To hold otherwise would amount, in effect, to allowing objections to plaintiff's candidacy to be made for the first time in the courts and not before the committee, and to allow such objections to be made not "in detail," but in the most general manner conceivable, to wit, that his petition "shows no cause of action."

### IV.

[4, 5] The "residence" necessary to constitute a qualified voter has thus been defined by this court:

"The term, 'actual bona fide resident,' * * * cannot reasonably be interpreted to mean that, in order to acquire, and, still less, to retain, such status, one must remain continuously in the town, or upon the premises, of the residence, and the status described is not therefore affected by temporary absences, occasioned by considerations of duty, business, health, or pleasure, unless, being voluntary, they extend beyond prescribed periods, or, are accompanied by the acquisition of residence elsewhere." Caufield v. Cravens, 138 La. 283, 70 So. 226, citing Estopinal v. Michel, 121 La. 879, 46 So. 907, 19 L. R. A. (N. S.) 759, and State ex rel. Hodges v. Joyce, 128 La. 434, 54 So. 932.

In Hall v. Godchaux, 149 La. 733, 90 So. 145, that definition was made more explicit, thus:

"An 'actual bona fide resident,' * * * need not have occupied his place of abode every moment during the required period of time, but *must have maintained such a relation with the place or premises as will entitle him at his will, without making new arrangements therefor on each return, to occupy such place whenever his necessities or pleasure required, without asking permission of some one else.*" (Italics ours.)

And when the conditions are as above stated, "*the question is one largely of intention.*" Caufield v. Cravens, supra.

### V.

There is no doubt whatever of plaintiff's intention in the premises. He was born in St. Bernard parish, and resided there from the age of 10 to the age of 26, when he married, to wit, July, 1925. He has always *claimed* to reside there, even since his marriage and to the present day, by registering as a voter, and by paying poll taxes and voting in said parish and nowhere else.

The question is, Are the other conditions present necessary to make him "an actual bona fide resident" of St. Bernard parish?

### VI.

Nor is there any doubt that plaintiff's aged father (68 years) and mother are actual bona fide residents of St. Bernard parish, residing at Violet in said parish; nor that they are absolutely dependent on plaintiff, who pays the rent of the house they live in and furnishes them the wherewithal to live, the father being unable to do any work and having done none for ten years past.

### VII.

Practically at the outset of the case the following admission was made by counsel for plaintiff, to wit:

"We are ready to admit that there was a house rented by the month at 5906 Burgundy street [in the parish of Orleans] where, for a part of the time, the plaintiff, and particularly his wife, resided; and where all of the customary municipal services, telephone, electricity, gas and water, were installed on applications made out either in his [plaintiff's] name or in the name of Mrs. Melerine [plaintiff's wife]. * * *"

In explanation of which it may be said that by "part of the time" was not meant that the house on Burgundy street had been rented and resided in for only a part of time since plaintiff's marriage, but that, although the house had been rented ever since plaintiff's marriage, he and his wife spent only part of their time therein.

### VIII.

And right here is the crux of this whole case. Defendant contends that plaintiff and his wife spend the whole or the greater part of their time in this house and thus make it *their home*, whilst plaintiff contends that this house was never the home of himself and his wife, was never intended to be such, was rented in an emergency, and has been retained for convenience, but that *the home* of himself and his wife is at the place where his father and mother reside, wherein the front room is the bedroom of himself and

his wife and where they reside and spend more than three-fourths of their time.

### IX.

The evidence shows clearly that plaintiff has a business establishment at Violet, at which he is habitually present, and that he has no other business connection. Plaintiff, his wife, and his father, all testify that the front bedroom in the house occupied by his father is the bedroom of plaintiff and his wife, to which he and his wife may and do come whenever they choose to do so without need of permission from any one; that plaintiff and his wife occupy said bedroom and take their meals at said house more than three-quarters of the time, and spend less than one-quarter of their time away from there. Three other witnesses testify that plaintiff and his wife are found constantly at said house, both in the daytime and at night. And the only testimony to the contrary (if it can be called such) is that of one witness that he sees plaintiff at his place of business only three or four times a week and does not know where he and his wife spend their nights.

### X.

Plaintiff and plaintiff's wife testify that they spend less than one-fourth of their time at 5906 Burgundy street, Orleans parish; four of the closest neighbors testify that plaintiff and his wife are very seldom at that place, and spend most of their time away from there. Husband and wife both testify that the house on Burgundy street was rented in an emergency, not being able to find a suitable house in St. Bernard parish at the time of their marriage, and having no place to put their furniture in the house at Violet; that, pending negotiations for the building of a home in St. Bernard, they were obliged to use the money intended for their home in erecting a store building at Violet for the business which plaintiff was obliged to go into because his former busi-

ness was not going satisfactorily; that in the meanwhile it was found more convenient, more satisfactory, and cheaper to keep the house on Burgundy street than to store their furniture and resort to hotels when they came to New Orleans for business or pleasure.

The only testimony to the contrary (if it can be called such) is that of several witnesses who testify that they have seen plaintiff and his wife at the Burgundy street house quite a number of times in the two years since their marriage.

### XI.

The only evidence which tends in the least degree to cast any doubt on the truth of the testimony of all these witnesses is the following:

The electric light statement for the house on Burgundy street was shown to an electrical engineer in the employ of the light company, to which he testified as follows (Tr. 149):

"The statement here would seem to indicate that there has been some electricty consumed during every month [July, 1925, to October 1927]. * * * This total consumption here for [by] the year is not as large as most of our consumers in New Orleans consume. Our average customer here consumes 380 kilowatt hours a year; that is, large and small and everything thrown in. This record shows about 220 a year. The average [per month] for 220 a year would be about 18 kilowatt hours per month. * * *"

We do not think that from that statement alone, without knowing the capacity and number of lights used by plaintiff and the number of hours the lights burned each night he was there, any one could possibly conclude how many nights he spent in that house each month. And hence the statement alone throws no light whatever on this case; for as the district judge observed, some people like "bright lights around the house and everything lit up," and others do not. And some people use electric heaters for warmth, and others use only coal, or oil or gas; some people use electric fans and irons and sewing machine motors and the like, and others do not. But a monthly bill for electricity indicates only the amount of current consumed for the month without distinguishing the use to which it has been put. So that a mere showing that plaintiff consumed 18 k. w. h. per month, standing alone, does not even suggest, and far less shows, how many days a month plaintiff occupied the Burgundy street house.

And our conclusion is that we would not be justified in rejecting, on such a speculative showing as this, the positive testimony of so many witnesses that plaintiff and his wife spent less than one-fourth of their time in this Burgundy street house, and more than three-fourths of their time in the house at Violet.

### XII.

But even if it were the fact that plaintiff and his wife, for their convenience in business or pleasure, spent more than one-fourth of their time in the Burgundy street house, nevertheless as stated, supra (paragraphs IX and X) plaintiff has retained such a relation towards the house at Violet as, when coupled with his manifest intention, brings him within the definition of "an actual bona fide resident" as set forth in Caufield v. Craven and Hall v. Godchaux, supra, par. IV.

### XIII.

The decree herein was handed down on Tuesday, November 22, 1927, and was as follows:

#### Decree.

The motion to dismiss the appeal is denied, and the judgment appealed from is affirmed.

O'NIELL, C. J. (dissenting). The evidence, in my judgment, sustains the committee's ruling that Mr. Melerine was not an "actual, bona fide" resident of the parish of St. Bernard. He has had his residence at 5906 Burgundy street, New Orleans, for over two years—since July, 1925. He paid the

rent regularly, at $35 per month, paid the electric light bills, and the water bills, etc. The lights burned regularly, according to the records of the New Orleans Public Service, Inc., and it is admitted that no one else but Mr. and Mrs. Melerine ever occupied the premises. There is a difference between the word domicile, which means the place where a man shall be sued, and the word residence, as meaning the place where a man may vote or hold political office. A man may maintain a civil domicile by his expressions of intention; but his place of residence is required by the Constitution to be actual and bona fide. I have no doubt that Mr. Melerine was sincere in his intention to preserve his right to vote in St. Bernard parish, while he maintained his place of residence in New Orleans—just as Judge Godchaux intended to preserve his right to vote in New Orleans while he maintained his place of residence in Fass Christian, Miss. But the question as to what is a man's place of residence— with regard to his right to vote—is determined by section 1 (a), art. 8 of the Constitution. Hall v. Godchaux, 149 La. 733, 90 So. 145. The members of the Democratic parish executive committee for the parish of St. Bernard knew the facts far better than we can know them, and the evidence does not convince me that their exercise of the judgment which is vested in them was wrong. In that connection, there seems to be no explanation of the records of the New Orleans Public Service, Inc., which show that the electric lights were burning in the Melerine residence, at 5906 Burgundy street, every month, commencing in July, 1925, and ending last month; the average consumption was 220 k. w. h. per annum; there was a bill for every month, ranging from $1.46 to $3.22; and there was no dispute that the bills were correct. It is admitted that no one else but Mr. and Mrs. Melerine occupied the residence. The lady living in the other

side of the double house would have observed it if an intruder had been occupying the house. I am bound to assume therefore that Mr. and Mrs. Melerine occupied the house regularly, every month, from July, 1925, until and including last month. Besides, the telephone directory showed that Mr. and Mrs. Melerine's residence was 5906 Burgundy street, and so does the city directory. The fact that they slept sometimes at his father's home in St. Bernard parish did not make that place their actual bona fide residence.

For the reasons stated, I respectfully dissent from the decision overruling the judgment of the committee and affirming that of the district judge.