## STEVENS v. UNION GRADED SCHOOL DIST. NO. 2 et al.

No. 18981. Opinion Filed March 19, 1929.

John R. Guyer, for plaintiff in error.

Fogg, Melone & Faubion, for defendants in error.

REID, C. This is an injunction action brought by the plaintiff, J. B. Stevens, against union graded school district No. 2 of Canadian county, and the officers of said district, as defendants, to prevent the issuance and sale of a bond issue of said district, the proceeds to be used for the purpose of building and equipping a schoolhouse. The trial court denied plaintiff's petition, and he appeals.

The election held on October 28, 1926, on the proposition submitted, was so close that the result of the election, which was declared to have carried, depends on the validity of the two votes cast for the bonds by one Mike Hupp and his wife, Eliza Hupp; the plain-tiff claiming that these parties were not entitled to vote, and that therefore the election failed, and that the injunction against the issuance and sale of the bonds should have been granted.

The qualifications for voters at this election are prescribed by section 10283, C. O. S. 1921, as follows:

"Qualified electors, for the purposes of this article, are hereby declared to be all persons, male or female, over the age of 21 years, who are citizens of the United States, and have been bona fide residents for more than three months next preceding such school district bond election, within the limits of such school district. * * *"

The plaintiff contends in his brief that the phrase "bona fide" preceding the word "residents" in said section adds emphasis, and further qualification to "residents," extending it beyond the ordinary meaning of that word as applied to the residential qualifications of electors as usually found in election laws.

In Stroud's Judicial Dictionary (2nd Ed.) vol. 1, p. 201, we find the following:

"Bona Fide. The equivalent of this phrase is 'honestly' (per Bramwell, L. J. R. v. Holl, 50 L. J. Q. 766; 7 Q. B. D. 575). The correct province of this phrase is, therefore, to qualify things or actions that have relation to the mind or motive of the individual. * * *

. "I suppose anybody would have a difficulty in defining the difference between a 'parishioner' and a 'bona fide parishioner.' I do not know what difference there is between them. (per Bramwell B., Etherington v. Wilson, 45 L. J. Ch., 158, 1 Ch. D. 160)."

In the case of Estopinal v. Michel, 121 La. 879, 46 So. 907, 19 L. R. A. (N. S.) 759, the Supreme Court of the state of Louisiana, in discussing the qualifications of voters under a constitutional provision which required that the voter be "an actual bona fide resident of this state for two years, and of the parish for one year, and of the precinct in which he offers to vote for six months next preceding the election," said:

"The reason of this requirement is stated in 10 Am. & Eng. Enc. Law (2nd Ed.) p. 596, as follows: 'The Constitutions of nearly all the states of the Union and the laws of nearly all of the territories require a residence for a definite period, ranging from three months to two and one-half years, as a prerequisite to the right of suffrage; and they usually require, in addition, a residence for a certain period within the county and voting precinct." (Emphasis ours.)

Notwithstanding the fact that the Consti-

tution there considered required the voter to be **"an actual bona fide resident,"** etc., a consideration of the whole case fails to disclose that the court gave any emphasis or importance to the qualifying clause as to residence, and the numerous cases cited in the notes to the case in 19 L. R. A. (N. S.) 759, contain no suggestion that the case there considered was taken out of the usual rule as to residence by reason of said phrase.

It is our conclusion that what is **expressed** in section 10283, supra, is always **implied** in the provisions of a Constitution or statutes requiring persons to be residents for a certain length of time in the state, county, or district before they can legally vote; and that therefore the phrase "bona fide" in the school bond statute carries no special significance. It follows that the authorities determining what constitutes residence by a voter in ordinary and general election cases furnish guidance on the sole question presented in this case.

The general rules for determining the question as to whether the person was a resident where he voted are well stated in 9 R. C. L. 1031, as follows:

"The meaning of the term 'residence' for voting purposes, as used in a state Constitution, cannot be made a matter of legislative construction, it is purely a judicial question, and while general rules and definitions as to its meaning may be laid down by the courts, there can be no absolute criterion by which to determine where a person actually resides. Each case must depend on its particular facts or circumstances. Three rules are, however, well established: First, that a man must have a residence or domicile somewhere; second, that where once established, it remains until a new one is acquired; and third, a man can have but one domicile at a time. While bodily presence ordinarily is essential in effecting a domicile in the first instance, it is not necessarily essential to its continuance, the most important factor being the intent to establish a new domicile, coupled with acts evincing such intent. Temporary absence for purposes of business, pleasure, or otherwise does not result in a loss of residence."

We have found no decisions of this court defining "residence" as found in our different election statutes. but the following cases are in harmony with the foregoing text, though applied when the word is used in other statutes. The cases are: Cornelison v. Blackwelder, 38 Okla. 1. 131 Pac. 701; Jacobson et al. v. Kill, 94 Okla. 146, 221 Pac. 21; Pope v. Pope, 116 Okla. 188, 243 Pac. 962; Anthis v. Drew et al., 123 Okla. 18, 252 Pac. 11.

The law as announced in the case of Lankford v. Gebhart, 130 Mo. 621, 32 S. W. 1127, 51 Am. St. Rep. 585, by the Supreme Court of Missouri, finds application to the facts in this case. The court said:

"The vote of Seth Sullivan was counted for contestee. Contestant insists that this vote should have been rejected, for the reason that it appeared conclusively from the evidence that the voter had not been a resident of this state for one year before the election.

"The evidence shows that Sullivan left this state for Oklahoma in August, 1893, and was there at the opening of that territory to settlement. He took his family with him. At the opening of the territory, he selected a claim, went upon it, and plowed the land for a few days. He went to the land office to file his homestead claim, and found his rights contested, and then abandoned them. He went from there to Kansas, where he rented a house and remained until December 20, 1893, when he started back to Missouri, where he arrived in January, 1894. He never moved his family onto the claim selected, nor into the territory, and testified that when he went to Oklahoma, it was his intention, if he was successful in securing a homestead, to remain, and, if not, to return to Missouri.

"Contestant insists that selecting a claim on governmental land for a homestead was conclusive of an intention to make that his home and residence.

"We do not think a mere selection of a claim, without securing the approval of the government and making the necessary declaration, would have the effect of concluding him on the question of residence. It was held by the Supreme Court of California that leaving one's residence merely for the purpose of complying with the homestead law would not cause a loss of residence: Preston v. Culbertson, 58 Cal. 198. In Illinois, it was held by the Supreme Court that leaving one's residence with an intention to remain away if suited, but to return if not suited, will not cause one to lose his residence if he returns before election: Beardstown v. Virginia. 81 Ill. 541; Smith v. People, 44 Ill. 16. See, also, 6 Am. & Eng. Ency. of Law. 279, notes. So this court has held that 'physical stay or residence in any particular place will not, of itself, constitute a domicile. The physical act of staying must be accompanied with the mental determination of making a home or domicile in the place where the party stays or abides:' State v. Dayton, 77 Mo. 682, and cases cited. We think the question of intention in this case must control, and the conclusion reached by the court must conclude us from further inquiry."

The foregoing case is especially in point

on the question as to whether or not Hupp and wife, after establishing their residence in the school district in the year 1924-1925, as we shall see from the evidence, had abandoned such residence prior to the election by establishing their residence in another place.

The evidence in this case discloses that during the years 1924-1925, Hupp and his wife, together with their five children, lived upon the farm of one Bocher, in said district, while Hupp was a tenant of Bocher's. The evidence is clear, and, in fact, it is admitted by plaintiff, that Hupp and his wife then became residents of this school district. During said time they properly voted at a school election held in the district. They had several relatives living in the district, including a brother of Hupp. When they had gathered their crop in the fall of 1925, they went to the home of a son-in-law who lived a mile and one-half across the Canadian county line in Caddo county, where they remained until March, 1926. They then went to Arkansas, as they testified, looking over the country, but with no intention of making it their home. And they returned to the home of their son-in-law in July, 1926. They remained there until the latter part of September, when they went to the home of Hupp's brother, in the district, where they were staying, assisting him in gathering his crop at the time this election was held on the 28th day of October, in which each of them voted for the bonds. The testimony shows that when these parties left Bocher's farm in 1926, they left their farming implements there as well as a part of their household goods and some of their live stock. They each testified that at all times they intended to return and continue their home somewhere in this school district. And their children were in school there at the time this election was held. Neither of the voters ever attempted to vote at any other place, or to exercise any acts of citizenship evidencing an intention of fixing their residence elsewhere after they had established the same in this school district at the time we have stated. However, it is contended by the plaintiff that they entirely lost their residence in the district at the time they left there in December, 1925, for the reason that they were tenants whose tenancy had expired, and they had no fixed home to which they could with certainty return.

McCrary on Elections (4th Ed.) p. 72 cites an Illinois case which we think quite in point on this question. The Supreme Court of that state, in the case of City of Beardstown v.

City of Virginia, 81 Ill. 541, in the opinion said:

"The vote of Allen C. Robinson seems to have been rejected on the ground of his not being a resident of the state. In September, 1872, the testimony shows he sold out and started, with his family, from his place of residence in Chandlerville precinct, in Cass county, in this state, for Texas, with the intention of locating there, if he could find a place to suit him; that, upon arriving in Texas, he turned back without unloading his goods, and returned to Chandlerville precinct, having been absent only 28 days, and remained in Chandlerville precinct until in the spring of 1873, when he removed to Kansas. We think he had not lost his residence in Chandlerville precinct at the date of the election, November 12, 1872. See Smith v. the People, 44 Ill. 16."

We think that the foregoing case, and also the Missouri case from which we have quoted, each answers the contention of plaintiff adversely to him. In the Illinois case it is stated that the voter "sold out" when he left Illinois, and in the Missouri case there is no intimation that the voter left any property in that state when he went away. It seems unquestionable that in neither of the cases did the voter leave behind him any fixed abode to which he knew he could return. Therefore, the fact that the Hupps had no fixed place in the district to which they knew they could return would make no difference.

We have concluded that there was no error in the holding of the trial court, and the judgment is therefore affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.