The State ex rel. Ramey v. Dayton.

THE STATE *ex rel.* RAMEY, *Prosecuting Attorney*, v. DAYTON, *Appellant.*

**Domicile.** Residing and engaging in business at a particular place do not, of themselves, make that the domicile of the person. There must, in addition, be the mental determination of making a home there.

*Appeal from Buchanan Circuit Court.*—HON. J. P. GRUBB, Judge.

REVERSED.

*Pike & Pike* for appellant.

No actual change of domicile or inhabitancy. *Hart v. Horn,* 4 Kas. 232; *Hairston v. Hairston,* 27 Miss. 721; *Maddox v. State,* 32 Ind. 111; *Hindman's Appeal,* 85 Pa. St. 466.   Conduct of business in Kansas City did not constitute a removal. *Roberts' Will,* 8 Paige 446; *Walker v. Walker,* 1 Mo. App. 404; *Re. Fitzgerald,* 2 Caines 318; *Crawford v. Wilson,* 4 Barb. 504.   Going out of state, county or town for a purpose and not taking up a permanent residence elsewhere, no removal.   *Sackett's case,* 1 Mass. 58; *Abington v. Boston,* 4 Mass. 312; *Walker's case,* 4 Mass. 556; *Granby v. Amherst,* 7 Mass. 1; *Lincoln v. Hapgood,* 11 Mass. 350; *Chariton Co. v. Moberly,* 59 Mo. 238; *Johnson v. Smith,*

43 Mo. 501; *Bartlett v. New York*, 5 Sandf. 44; *Carey's Appeal*, 75 Pa. St. 201.

*H M. Ramey* for respondent.

MARTIN, C.—On the 31st day of October, 1877, the prosecuting attorney of Buchanan county filed in the circuit court of that county an information in the nature of a *quo warranto* against the defendant, alleging that prior to the 15th day of August, 1877, the defendant was a duly elected and qualified member of the board of councilmen of the city of St. Joseph, for the second ward of said city, and that on the last named date he removed from said city of St. Joseph to Kansas City, and changed his domicile to said latter place, and thereby vacated his said office; that notwithstanding said vacation of his office the defendant continued to exercise the functions thereof. The defendant answered the information under protest, admitting his election and qualification to the said office, and denying that he had removed from the city or changed his domicile, averring that he was a resident of the city of St. Joseph, domiciled in the second ward. A reply was filed putting the new matter of the answer in issue.

At the trial the following evidence was submitted: Buckingham testified: That Mr. Dayton told him that he was going to Kansas City; he did not say he was going to remove his family, but might do so in January; did not remember the words used by Dayton, only the substance; Dayton said he was going into business with Tootle, Hanna & Co. James E. Roberts testified: That one Sunday morning before suit was brought, he remarked to Dayton that he heard he had gone to Kansas City, and he said he had; asked him if he had taken his family down, and he replied that he had not, but would do so; did not say why or for what purpose he had gone to Kansas City. Ex-Governor Woodson testified that he also remarked to Dayton that he heard he was going to Kansas City, and

Dayton told him he was going in two or three days, but that his family would remain during the winter, or until January. Mr. Thompson testified to a similar conversation, and so did Mr. Piner. Defendant admitted that he had n'ot been engaged in business in St. Joseph since August 15th, 1877, but had been since that date engaged in business in Kansas City. This was all the evidence produced by the relator.

Dayton testified: "I am now doing business in Kansas City, Missouri, with Tootle, Hanna & Co.; am employed by them on a salary; my home is now in the second ward of this city (St. Joseph), and I have resided there eleven years. I come home every Saturday night; I have no other home than in the said second ward, St. Joseph; have no fixed intention of going to Kansas City to live, and do not know that I will be engaged in business there longer than January 1st, 1878; I have a family which now resides, as it has for eleven years, in said second ward of St. Joseph."

Cross-examination. "Went to Kansas City August 15th; arranged with Tootle, Hanna & Co, about that time; made no permanent arrangement with them beyond a fixed salary until January 1st, 1878; I am just trying the business with them; if we suit each other I may remove there. I stop at the hotel in Kansas City, and come home to my family every Saturday night. I probably told Mr. Roberts what he said I did." To the court: "I went to Kansas City to make an experiment with Tootle, Hanna & Co.; I had no fixed intention of going there to remain permanently; if I could agree with them and make terms to suit, I intended to stay there; I had no fixed intention to abandon my home here; my going there was only an experiment; did not leave here with the purpose of remaining away except conditionally; but if I could make agreeable business arrangements with Tootle, Hanna & Co. would go there to live." This was all the evidence.

The court found the issues for the plaintiff, and gave a judgment of ouster. The defendant appealed from this judgment.

Since the decision of the case of *State ex rel. v. Fitzgerald*, 44 Mo. 425, in which it was held that a proceeding in the nature of a *quo warranto* would lie against a person exercising the rights and privileges of a member of the council of the city of St. Joseph, no doubt can be entertained about the legality of the remedy here invoked.

The only question presented to us for consideration is, whether the evidence in the record was sufficient to sustain the judgment of ouster appealed from. The charter of the city of St. Joseph contains the following provision : " If any councilman shall, after his election, move from the ward from which he was elected in said city, his office shall be thereby vacated." Sess. Acts 1857, p. 89, § 5. The information declared that the defendant had removed from St. Joseph and had changed his domicile to Kansas City. The defendant denied this.

The obvious purpose of the provision was to prohibit any representation of a ward in the city council by any one not an actual resident or inhabitant of the ward. Whether his ability to discharge the duties of a councilman was or was not impaired by reason of the absence complained of, is immaterial. He must answer to the council for that. He might, as a matter of fact, continue to discharge all his duties in the council, and yet lose his position as a councilman, by changing his domicile to another ward. On the other hand, he might be a constant delinquent in the council by reason of temporary absence from the State, and yet retain his position there, so far as the courts are concerned, by retaining his domicile in the ward he was elected from. His position as councilman depends upon his status as an inhabitant of the ward, and that is determined by the law which defines the domicile of the citizen. Removal and change of domicile are treated

in the pleadings as equivalent terms. Being a resident of the ward domiciled with his family there, his domicile will be presumed to continue until it is shown he has changed it. The evidence of such change consists in this case of his engaging in business in Kansas City, which required him to be there the greater portion of his time. But to give him a domicile in Kansas City, two things must concur. It is not sufficient that he is there the greater portion of his time; his stay there must be with the intention of making it his home or domicile. Physical stay or residence in any particular place will not, of itself, constitute a domicile. The physical act of staying must be accompanied with the mental determination of making a home or domicile in the place where the party stays or abides. *Johnson v. Smith*, 43 Mo. 499; *Chariton Co. v. Moberly*, 59 Mo. 238.

The evidence in this case failed to show at the filing of the information that defendant's stay in Kansas City was accompanied with the intention of making that place his domicile. The most that can be claimed of it is, that he contemplated in the future a removal of his domicile to Kansas City. The intention related to the future. He had not carried it out. His family remained in the second ward of the city of St. Joseph, the same as before, and he returned every Saturday to that place and abided in it as before. In this age of rapid transportation, his temporary absence in Kansas City, may not have interfered with his duties as a councilman any more than if he was conducting his business in another ward of the city of St. Joseph. But as already stated, considerations of this character belong to the council and not to the courts. He testified that he had no other home, and that he had no fixed intention of going to Kansas City to remain permanently, and that his future removal to that city depended upon the outcome of his business connections with Tootle, Hanna & Co. The evidence in the record fails to support the finding of a removal within the meaning of the char-

The State ex rel. Ramey v. Dayton.

ter of the city, and the judgment of ouster ought to be reversed. Accordingly, the judgment of the circuit court is reversed, the writ of *quo warranto* denied, and the information dismissed. PHILIPS, C., concurs; WINSLOW, C., absent.