Lankford v. Gebhart.

LANKFORD, *Appellant*, v. GEBHART, *Appellant*.

In Banc, November 19, 1885.

1. Contested Election: AUSTRALIAN BALLOT LAW: VOTER'S NAME ON BALLOT. The Australian ballot law (Acts, 1891, sec. 8, p. 135) having repealed section 4671, Revised Statutes, 1889, a ballot on which is written the name of the voter, it not appearing to have been placed thereon before it was delivered to him, nor for the purpose of identifying it, should be counted.

2. ———: VOTER, RESIDENCE OF. A finding on conflicting evidence that a person was a resident voter will not be disturbed on appeal where no declarations of law were asked or given, nor specific findings of fact made.

3. ———: ———. Where a person went to another state to remain there if he was successful in obtaining a homestead and to return if he was not, he did not lose his residence as a voter in this state, though he selected and worked a claim, but shortly afterward, on finding it contested, abandoned it, and he and his family lived in another state for several months before returning to this state.

4. ———: VOTER: PREMATURE CLOSE OF POLLS: STATUTE. Under Revised Statutes, 1889, section 4667, providing that the polls shall remain open until 6 o'clock in the evening, a ballot cast and accepted by the judges before that hour should be counted, though the polls were previously closed by the unauthorized proclamation of a constable and the ballot was secretly prepared in a place other than one of the booths.

5. ———: EVIDENCE: MUTILATED BALLOT. Evidence is competent to show that a mutilated ballot was intact when voted.

6. ———: PAROL EVIDENCE: IDENTIFYING VOTER. Parol evidence is not admissible to show that a ballot appearing to be cast by one *Vance*, whose name was on the poll books, but who was not a resident of the precinct, was in fact cast by one *Zentz*, who was a resident voter but whose name did not appear on the books.

7. ———: VOTER: RESIDENCE. One in the United States railway mail service whose established home is with his father can not, by reason of his boarding at a hotel in another township, vote there.

| | |
|---|---|
| 130 | 621 |
| 132 | 68 |
| 130 | 621 |
| 68a | 122 |
| 130 | 621 |
| 140 | 399 |
| 140 | 413 |
| 71a | 41 |
| 130 | 621 |
| 164 | 39 |
| 164 | 41 |
| 130 | 621 |
| 90a | 406 |

Lankford v. Gebhart.

8. ———: ———: ———. The rejection of a vote of one who was a permanent member of a soldiers' home in another state and who was not permitted to leave it without a furlough but who testified he had no intention of changing his residence to that state will not be disturbed on appeal.

9. ———: ———: ———. One who bought and took possession of a farm and with two of his sons began work on it with the purpose of making it his permanent home, though he did not bring his wife and other children until afterward, acquired a residence for voting purposes from the day he took possession.

10. ———: ———: ———. Whether one, whose father removed from this state to the city of Washington and was employed in the government service, and who lived with his father during his minority but who testified that he had never intended to change his residence, did in fact lose his residence here was a question of intention, and the finding of the trial court thereon will not be disturbed on appeal.

11. ———: BALLOT: STATUTE. Where the statute requires that a ballot, on account of want of conformity to any particular provision of the law, shall not be counted, it is mandatory.

12. ———: ———: PAROL EVIDENCE. Where only the number of the ballot was recorded in the poll book but no name was written in connection therewith parol evidence is not permissible to show who voted said ballot.

13. ———: VOTER: RESIDENCE. The finding on conflicting evidence that a person was a resident voter of the county will not be disturbed on appeal.

14. ———: RECOUNTING BALLOTS: SERVICE OF NOTICE. The fact that the writ directing the clerk to recount the ballots and the notice thereof to the contestee were not served in the manner or by the person required by law is immaterial, where it appears that the clerk obeyed the writ and that the contestee was present at the recount.

*Appeal from Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Alexander & Richardson* and *J. F. Hicklin* and *J. P. O. Givens* for contestant as appellant.

(1) Under the statutes, a ballot is fraudulent, without regard to intent, when it has on the face or

back thereof any writing or printing not expressly authorized, hence all ballots having the names of the voters written on the back thereof are fraudulent, and should not have been counted. R. S. 1889, secs. 4671, 4677, and secs. 4773 and 4780, as amended by Session Acts, 1891, pages 134 and 135. *West v. Ross*, 53 Mo. 351; *Ledbetter v. Hall*, 62 Mo. 422; *Gumm v. Hubbard*, 97 Mo. 311; *Bowers v. Smith*, 111 Mo. 45—dissenting opinion of Judge GANTT. (2) Sections 4671 and 4677, article 1, and sections 4773 and 4780, article 3, chapter 60, R. S. 1889, as amended by laws of 1891, page 134, section 4 and page 135, section 8, prescribe what writing and printing shall be on the face and back of a ballot, and the last clause of section 4671, *supra*, expressly states that "Any ballot not conforming to the provisions of this chapter (chapter 60, which includes all the sections above cited) shall be considered fraudulent, and the same shall not be counted." (3) This court should review the finding of the court below that Seth Sullivan, John Persinger and Orva Cook, were qualified voters. Section 4710, Revised Statutes, 1889, provides that courts authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading. (4) The court made a separate finding in each case, and the evidence relating to the qualifications of each voter is set out in the record, so that the objections made by this court to the review of the evidence in *Gumm v. Hubbard*, 97 Mo. 321, do not obtain here. (5) The ballot of Albert Cornelius should have been rejected, as the undisputed evidence in the case shows that it was received and counted after the polls had been closed, and the booths removed, and the judges and clerks had finished counting the vote, and were filling out the certificates, etc. (6) The statutes prescribe how the polling places shall be arranged and the voting con-

ducted with great clearness. R. S. 1889, secs. 4672, 4673, and 4779, 4780, 4781, 4782, 4784 as amended by Laws, 1891, p. 135.

*Hamilton & Dudley* for contestee as respondent.

(1) The court did not err in counting for contestee the ballots of Frank Scott and others, nine in number, with names and initials of voter written on the back thereof. Section 4780, as amended by section 8, Acts of 1891, page 135, prescribes what shall be on backs of ballots; it is merely directory, and does not say if there is anything else on the back of the ballot it shall be fraudulent, or that it shall not be counted. To reject these ballots would be to establish a rule by which an officer of election could destroy the effect of a ballot, cast in good faith by a legal voter, by placing a name, initial, or mark on the back of it. McCrary on Elections [3 Ed.], page 312, sec. 463; 6 Am. & Eng. Encyclopedia of Law, page 350 (bottom), note; *Weggington v. Pacheo*, 5 Cong. El. Cases, 5. (2) And under the same statute, which is far more sweeping than ours, the court held the words "*For president, Hancock and English,*" written on the ballot in pencil, would not invalidate it, and that the ballot should be counted. *Coffee v. Edmonds*, 58 Cal. 521. (3) The presumption of the law is in favor of the legality of these ballots. There is no evidence that the voter wrote the names there, and there is no presumption that they did so, as contended for in contestant's argument; but, conceding, for the sake of argument, that they were written there by the voter, it ought not to invalidate said votes. Section 4671, Revised Statutes, only prescribes what the face of the ballot shall contain, and does not undertake to say what shall be written on the back thereof, and is designed to prevent the placing of anything on the face of the ballot calculated to

mislead the voter. *Gumm v. Hubbard*, 97 Mo. 317; *Applegate v. Egan*, 74 Mo. 223. (4) While the back of the ballot is regulated by section 4870, Revised Statutes, as amended by Session Acts, 1891, page 135, relating to the duties of the judges in delivering the ballots to the electors, this section provides that the judges shall write their names or initials on the back of the ballot, and no other writing shall be on the back thereof except the number, but it does not say that the ballot shall be void if it contains anything else, as does section 4671 in speaking of the face of the ballot. *Bowers v. Smith*, 111 Mo, 62. (5) Said nine votes should not be rejected for another reason: There was no notice given that they would be contested. Contestant's notice must give the names of the votes contested, and the grounds for which such votes were contested. *Gumm v. Hubbard*, 97 Mo. 317. (6) The cases of Orva Cook, Seth Sullivan, and John Persinger are all questions of fact to be decided by the evidence. It is not the province of the court to determine disputed questions of fact in contested election cases. *Gumm v. Hubbard*, 97 Mo. 321; *Turner v. Drake*, 71 Mo. 285; *Gillispie v. Stone*, 43 Mo. 351; *Steinburg v. Gebhardt*, 41 Mo. 521; *Blumenthal v. Torini*, 40 Mo. 159. (7) The vote of Albert Cornelius was legally cast, and the court committed no error in counting it. The testimony shows that this vote was cast before 6 o'clock, the time fixed by law for closing the polls. (8) The court committed no error in counting Franz Zentz for Frank Vance. (9) A mutilated ballot is presumed to be accidentally torn. *Kreitz v. Berensmeyer*, 17 N. E. Rep. (Ill.) 232.

*Hamilton & Dudley* for contestee as appellant.

(1) Jerry Snider and C. G. Buckingham were legal voters, and should have been counted as such.

Residence is *prima facie* evidence of domicile. (2) The vote of Benjamin Porterfield should not have been counted. See *State, etc., v. Daylort*, 77 Mo. 628. (3) The original domicile continues until changed for another. *State v. Finn*, 4 Mo. App. 347; 1 Am. Lead. Cas. 747; *Williams v. Whiting*, 11 Mass. 424; McCrary on Elections, sec. 36. (4) A man's residence may be said to begin from the time at which he removes his family, although he may have determined to remove, and may himself have gone to his new place of residence before that time. 6 Am. and Eng. Encyclopedia of Law, 278; *Williams v. Whiting*, 11 Mass. 424, *supra;* *Webster case*, Cushing's Election Cases, 526; *Weggington v. Pacheo*, 5 Cong. Elec. Cas. 13. (5) Residence is not lost or gained by forming an intention to remove without actual removal; the intention and act must concur. *State v. Hallet*, 8 Ala. 159; *Lincoln v. Hapgood*, 11 Mass. 350; *Smith v. Croom*, 7 Fla. 81; *Brewer v. Lemins*, 36 Me. 428; *Griffin v. Wall*, 32 Ala. 149; 6 Am. and Eng. Encyclopedia, 279; 5 Am. and Eng. Encyclopedia, 876, and cases cited. (6) Vote of James Gillilan should not have been counted. Removal, with intention of making home elsewhere for an indefinite time, with floating intention to return at some future time, will not save residence. *State v. Groom*, 10 Iowa, 308; *State v. Freist*, 4 Harr. (Del.) 558; *State v. Gray*, 1 Tex. 401; *Holmes v. Green*, 7 Gray (Mass.), 299. (7) Carlos B. Tomlin was not a legal voter. See Dicey on Domicile, 67; 5 Am. and Eng. Encyclopedia of Law, 862; *Wright v. Schneider*, 32 Fed. Rep. 215; *Harris v. Forth*, 4 Cranch (U. S. Cir.) 710. (8) Contestant contested ballot number 6 because it had no name written opposite to it. The clerks having revealed the fact that it was cast for contestant, he can not now be heard to say it was a legal ballot. See *Ledbetter v. Hall*, 62 Mo. 422; *West v.*

*Ross*, 53 Mo. 350. (9) Ballot number 342, cast by Jas. Cummings should not have been rejected. *Coffee v. Edwards*, 58 Cal. 521.   Section 4671, Revised Statutes, 1889, is only designed to prevent the placing on the ballot anything designed to mislead the voter. *Applegate v. Egan*, 74 Mo. 263; *Gumm v. Hubbard*, 97 Mo. 319; *Atkison v. Lay*, 115 Mo. 538.   (10) The clerk had no authority to open and count the ballots, because the writ to open, count, and compare with list of voters and examine ballots was not served as required by law. R. S. 1889, secs. 4721, 4722.

*Alexander & Richardson* and *J. F. Hicklin* and *J. P. O. Givens* for contestant as respondent.

(1) Jerry Snider was not a legal voter, for the reason that he was an inmate of an asylum, and kept at public expense. Const. of Mo., sec. 8, art. 8.   He was a nonresident of the state of Missouri. (2) C. G. Buckingham was not a legal voter for the reason that he was not a resident of Daviess county for more than sixty days prior to the election. Const. of Mo., sec. 2, art. 8.   If a resident of Daviess county, then his legal residence was in Washington, and not in Benton, township. Const. of Mo., sec. 7, art. 8. (3) Benjamin Porterfield was a legal voter, having removed to Daviess county, with intent to change his domicile, more than sixty days prior to the election. *Walker v. Walker*, 1 Mo. App. 404; *State ex rel. v. Dayton*, 77 Mo. 678; *Johnson v. Smith*, 43 Mo. 499; *Chariton Co. v. Moberly*, 59 Mo. 238. (4) James Gillilan, under the testimony, was a resident of Jamesport township, and had been for nearly forty years.   This court, if it follows the rule laid down heretofore, will not review the finding of the lower court. *State v. Barton*, 71 Mo. 288; *Gumm v. Hubbard*, 97 Mo. 321. (5) Carlos B. Tomlin was a legal voter.

There is no evidence that he had changed his domicile. His absence from the state, in the civil service of the United States did not forfeit his residence here.    Const. of Mo., sec. 7, art. 8.    (6) Ballot number 6 was properly counted, as it appeared by the uncontradicted testimony that it was cast by R. C. Edwards, and that his name was not entered on the poll books by the negligence of the clerk.    The statute cited by counsel for appellant does not say that ballots registered properly shall not be counted, but those not numbered.    (7) James Cummings' ballot was void, as it had other writing on the face than that authorized by law.    R. S. 1889, secs. 4671, 4677, art. 1; and secs. 4773, 4780, art. 3, chap. 60, as amended by Laws, 1891, p. 134, sec. 4, and p. 135, sec. 8.    *Gumm v. Hubbard*, 97 Mo. 321.    (8) The writ issued by circuit court directing clerk to recount ballots was properly served; also notice to contestee by clerk was properly served.    R. S. 1889, secs. 4721, 4722, 4188.    But, if not properly served, the defects as to service were waived.    *Peters v. Railroad*, 59 Mo. 406; *Hulett v. Nugent*, 71 Mo. 131; *Krouski v. Railroad*, 77 Mo. 362; *Pry v. Railroad*, 73 Mo. 123.

MACFARLANE, J.—This is an election contest over the office of sheriff of Daviess county.    On a proper order the ballots were opened, examined, and recounted by the clerk.    Upon a hearing in the circuit court it was found and adjudged that contestant and contestee each received at said election 1822 votes.    Both parties appealed.    For convenience the two appeals will be considered together.

I.    Contestant objected to the legality of nine votes counted for contestee, for the reason that each of the ballots had written on the back thereof the name of the voter who cast the same.    It did not appear by whom the names, or any of them, were written.

The statute was designed to preserve the secresy of the ballot, and the legislature had the undoubted right to prescribe the form to be used, and to prohibit any marks, devices or writing thereon by which the ballot of one person could be distinguished from that of another. These statutes are said to be either mandatory or directory. If the former, a substantial variance from the prescribed requirements will invalidate the vote.

The decisions of this court have been uniform and consistent in holding that a statute which declares that a ballot should not be counted which is cast in disregard and violation of certain prescribed forms, is mandatory. *State ex rel. v. Cook*, 41 Mo. 593; *West v. Ross*, 53 Mo. 350; *Ledbetter v. Hall*, 62 Mo. 422; *State ex rel. v. Frazier*, 98 Mo. 426; *Bowers v. Smith*, 111 Mo. 45.

Contestant insists that the requirements of section 4671, Revised Statutes, 1889, and of sections eight and nine of the act of 1891 (Acts of 1891, p. 135) were violated by writing on the back of the prospective ballots the name of the voter thereof; that the requirements of these sections are mandatory, and such votes should not be counted.

Section 4671, Revised Statutes, 1889, provides that the ballot voted "shall not bear upon it any device whatever, nor shall there be any writing or printing thereon, except the names of persons, and the designations of the office to be filled, leaving a margin on either side of the printed matter for substituting names. * * * Any ballot not conforming to the provisions of this chapter shall be considered fraudulent, and the same shall not be counted."

Section 8 of the act of 1891 (page 135), after requiring that the judges of election should deliver to the voter a ballot, makes this provision: "Before delivering any ballot to the elector, the two judges of elec-

tion having charge of the ballots shall write their names or initials upon the back of the ballot with ink or indelible pencil, and no other writing shall be on the back of the ballot, except the number of the ballot."

Section 9 provides that, after preparing the ballot, "the elector shall fold the same so that the face of the ballot will be concealed and the initials of the judge may be seen. He shall then vote forthwith and before leaving the polling place."

But it will be observed that the act of 1891 is amendatory of the general election law, of which section 4671 is a part. The latter section is found in the law before the Australian system of voting was adopted. A comparison of that section with the said sections 8 and 9 will show that the requirements are wholly inconsistent and irreconcilable. The amendatory law by section 13 expressly repeals all acts or parts of acts inconsistent with it. We must therefore hold that section 4671 was repealed by the later act of 1891.

Under the election law as in force, the ballots must be officially printed and furnished the voter by the officers conducting the election. The voter is left no choice in selecting or making his ballot. It is true section 8 of the act of 1891 requires that two of the judges of election shall write their names or initials on the back of the ballot furnished the voter, and that no other writing shall be on the back of the ballot, except the number of the ballot; but it will be observed that this prohibition refers to the time the ballot is delivered to the voter and not to the time at which it is voted.

Even though the statute was intended, as doubtless it was, to require that the ballot when delivered by the voter to the judges should have no other writing on the back, except the names or initials of the judges, and the number of the ballot, it should not be regarded as mandatory. There are no negative or other words

making it mandatory in form, as was the case with the statute it repealed. That statute, with its construction, was before the legislature, and the omission to give the repealing law a mandatory form is very significant of a contrary intention.

Nor can we see that the mere writing of the name upon the ballot, though done by the voter himself, was such violation of the intended secrecy of elections as should render it void. It did not appear that the ballot was so folded that the name written on it could be seen by anyone or that the name was written for the purpose of identifying the vote. The name on the back of the ballots gave no greater opportunity for identifying it than the number on the poll list afforded.

The statute we think should only be considered as giving direction to the officers of the election in respect to the discharge of their duties and not as mandatory upon the voter. If the name was so written on the ballot that it could be seen, the judges should have refused to receive it, and required the voter to prepare another. As it was accepted by the judges and there was no evidence of intentional violation of the law on the part of the voter, the vote was properly counted.

II. Contestant challenges the legality of the votes of Orva Cook and John Persinger, counted for contestee, on the ground that they had changed their residence to another state, and had not resided in this state after their return to it for one year before the election. There was some conflict in the evidence as to whether these persons ever changed their residence from this state. No declarations of law were asked or given, or specific findings of fact made by the court. In such case this court will not interfere with the conclusions reached by the trial court. *Gumm v. Hubbard,* 97 Mo. 321.

III. The vote of Seth Sullivan was counted for contestee. Contestant insists that this vote should have been rejected for the reason that it appeared conclusively from the evidence that the voter had not been a resident of this state for one year before the election.

The evidence shows that Sullivan left this state for Oklahoma in August, 1893, and was there at the opening of that territory to settlement. He took his family with him. At the opening of the territory he selected a claim, went upon it, and plowed the land for a few days. He went to the land office to file his homestead claim and found his rights contested, and then abandoned them. He went from there to Kansas, where he rented a house and remained until December 20, 1893, when he started back to Missouri, where he arrived in January, 1894. He never moved his family onto the claim selected, nor into the territory, and testified that when he went to Oklahoma it was his intention, if he was successful in securing a homestead, to remain, and, if not, to return to Missouri.

Contestant insists that selecting a claim on government land for a homestead was conclusive of an intention to make that his home and residence.

We do not think a mere selection of a claim without securing the approval of the government, and making the necessary declaration, would have the effect of concluding him on the question of residence. It was held by the supreme court of California that leaving one's residence merely for the purpose of complying with the homestead law would not cause a loss of residence. *Preston v. Culbertson*, 58 Cal. 198. In Illinois it was held by the supreme court that leaving one's residence with an intention to remain away if suited, but to return if not suited, will not cause one to lose his residence if he returns before election. *Beardstown v.*

*Virginia,* 81 Ill. 541; *Smith v. People ex rel.,* 44 Ill. 16; see, also, 6 Am. and Eng. Encyclopedia of Law 279, notes. So, this court has held that "physical stay or residence in any particular place will not, of itself, constitute a domicile. The physical act of staying must be accompanied with the mental determination of making a home or domicile in the place where the party stays or abides." *State ex rel. v. Dayton,* 77 Mo. 682 and cases cited. We think the question of intention in this case must control, and the conclusion reached by the court must conclude us from further inquiry.

IV. In one precinct a voter was permitted to cast his vote after the polls had been formally closed. The evidence showed that the polls were closed before 6 o'clock in the evening, and indeed that the contested vote was cast before that hour. But it shows further that the polls had not only been closed but that the booths had been removed, and the judges and clerks were engaged in counting the vote.

It was held in *Gumm v. Hubbard, supra,* that the polls, when closed, are closed to the judges as well as to other persons. But the fair presumption is that the polls in that case were not closed until the time of the day fixed by law for closing them.

The statute requires that the polls "shall continue open until 6 o'clock in the evening, unless the sun shall set after 6, when the polls shall be kept open until sunset." The requirement seems to be very positive that the polls shall be kept open until the hour named. The statute provides for no formal closing of the polls. The duties of the election officers continue at least until the hour named. The rights of voters should not be prejudiced by premature suspension of their duties by the judges and clerks. The law nowhere authorizes a constable by public proclamation, as was

done in this case, to close the polls, or put an end to the voting.

The fact that the voter prepared his ballot in a place other than one of the booths should not invalidate his vote. It did not appear that the ballot was not secretly prepared. Moreover, it was accepted by the judges and we ought to presume that they did their duty in that respect. This vote was properly counted.

V. It appeared on examination of the ballots that the caption had been torn off one of them which was counted for contestee. It was shown by evidence that said ballot was intact when voted. Contestant objected to this evidence.

Effect should be given to the will of the electors, and it is now generally agreed that the circumstances surrounding the election may be given in evidence on an election contest to explain ambiguities in the ballot. *Gumm v. Hubbard, supra.* With the same purpose in view, no reason can be seen why this evidence was not properly admissible. If the ballot was legal when voted, it should be counted. To exclude proof of its legality would virtually be a denial of the right to count a legal ballot. The evidence was admissible.

VI. The name of Frank Vance appeared upon the poll books as one of the voters. No man of that name lived in the election precinct. Frank Zentz was a qualified voter of the precinct and voted thereat, but his name does not appear upon the poll books. The court admitted parol evidence for the purpose of proving that the ballot was cast by Zentz. The proof having been made to the satisfaction of the court, the vote was counted for contestee.

The constitution provides that "every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter

who presents the ballot." It further provides that, "in all cases of contested elections the ballot cast may be counted, *compared with the list of voters,* and examined under such safeguards and regulations as may be prescribed by law." Section 3, article 8, constitution of Missouri. The statute requires the judges to number the ballots, and the clerks of election "to enter the names of the voters and the number of the ballots, in the order in which they were received on the poll books." The question is whether parol evidence is admissible for the purpose of showing that a ballot, duly numbered, was cast by a person other than the one whose name is recorded on the poll books opposite the corresponding number.

The names Vance and Zentz are not *idem sonans* and can not therefore be taken as the same. It is claimed that an elector, who is qualified, and who has himself complied with all the requirements of the law, should not be disfranchised on account of the failure of the election officers to perform their duties. There can be no doubt that a hardship would be done the individual voter in denying him a voice in the election through no fault of his own. But, at the same time, the state has the undoubted right to regulate the manner of conducting elections, to prescribe what shall be done by the voter and the officers, and to make the validity of the vote dependent upon due compliance therewith. *West v. Ross,* 53 Mo. 350. The constitution and the statute were designed to secure the purity of elections, and, in those requirements which are mandatory, individual rights must give way to the public good, which we assume the law was intended to promote.

If the statute stood alone it could be given the liberal construction claimed for it, but a positive requirement of the constitution can not be treated as a mere direction. As is said: "Constitutions do not

usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must be regarded in the light of limitations upon the power to be exercised." Cooley's Const. Lim., 93.

The constitution speaks in unmistakable terms. It declares the will of the people of the state. It can not be regarded merely as giving directions to the officers of elections in respect to their duty. It must be taken as mandatory. The requirement that in cases of contested elections the ballots cast may be compared with the list of voters excludes any other means of identifying the person who cast the ballot. An expression of one mode of proof is an exclusion of all others.

It is very clear that the constitution was intended not only to provide the means for detecting illegal votes and frauds in elections, but also, which is equally as important, to prevent frauds and perjuries in cases of contests. The ballots are all alike, and *prima facie* make a valid vote. Whether they should be counted depends upon the qualification of the voter. The voter is required to be identified by his number on the poll book which must correspond with the number of the ballot. In case one voted who was not a qualified voter there could be no definite identification of the ballot he cast if he or witnesses were permitted to contradict the evidence the poll books afford. The law was intended to identify not only the voter but also the ballot. The ballot is what counts, and what ballots shall be excluded when a fraudulent voter is found, is the question of vital importance. The constitution was intended to prevent frauds and perjuries in identifying the ballots and to prevent the rejection of legal and the counting of illegal votes. We regard the constitution as mandatory and when it so speaks the

courts have no discretion. This vote should have been rejected.

This concludes the errors assigned by contestant. It thus appears one vote was improperly counted for contestee.

VII.  It is admitted by contestant that four votes counted for him also had the name of the voter written thereon. For the reason given in paragraph one, these votes were properly counted.

VIII.  The vote of C. G. Buckingham, who voted for contestee was rejected by the court, and of this ruling contestee complains.

This voter was in the railway mail service of the United States, and voted at Pattonsburg, Daviess county. Previous to going into this service his residence was with his father in Washington township, Daviess county. Buckingham testified that he had no established home except that of his father, but he had lived at Pattonsburg, boarding at the hotel, from October 25 to the day of the election. Had been in the mail service since May 24, 1894, most of the time running into St. Louis. From October 25, his run was between Pattonsburg and Brunswick, his stopping place being at Pattonsburg, Benton township.

We think this vote was properly rejected by the court. The constitution provides that, "for the purpose of voting, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence while employed in the service, either civil or military, of this state, or of the United States." Section 7, article 8, constitution of Missouri. The statute provides that each voter shall vote only in the township in which he resides. Section 4670. This voter, according to his own evidence, recognized his father's home in Washington township as his residence. This residence was not

changed by his employment in the civil service of the United States.   His voting place, unless he had adopted another, was in Benton township, the residence of his father, and his vote cast in another township, though in the same county was properly rejected.   He was not a qualified voter in such township.

IX.   The vote of Jerry Snyder, who voted for contestee, was rejected.   Of this contestee complains.

The evidence shows that Snyder had lived in Daviess county for many years, but at the date of the election was a member of the soldiers' home at Leavenworth, Kansas.   It did not appear, how long he had been a member of the home.   Snyder testified that he was a "permanent" member of the home and was admitted free, but testified further that he had no intention of changing his residence from Daviess county in this state and that he had been home on furlough for four months preceding the election.

The statute makes no special provision for such a case.   The legality of the vote depended upon the residence of the voter.   That was a question of intention. The testimony of Snyder that he had no intention of changing his residence when he became a member of the home or afterward may be taken as a mere conclusion of the witness.   A contrary intent may be gathered from all the circumstances.   The evidence that he was a permanent member of the home and that he was not permitted to leave it without a license or "furlough" from the manager would tend very strongly to prove a change of residence.   Under the evidence the court may well have inferred that a permanent residence was adopted in the state of Kansas, and, in the absence of any declaration of law, we must presume that it so found.

X.   Benjamin Porterfield formerly lived in Livingston county.   On the twenty-fifth day of August,

1894, he bought and obtained possession of a farm in Daviess county. At that time he moved part of his household goods and farming implements to his farm, and commenced work on it. He took two of his sons with him. The rest of the family, consisting of wife and three children, were not moved to the farm until September 10, which was only fifty-eight days before the election. He testified that, when he went upon the farm and commenced work, he intended it as his permanent residence. Porterfield voted for contestant and his vote was counted.

Contestee insists that the residence of this voter was not acquired in Daviess county until his entire family was moved there. This claim is made upon authority of *State ex rel. v. Dayton*, 77 Mo. 678. But this material distinction will be noted between that case and this one. In that case the evidence shows that the voter, Dayton, did not go to, or remain at, work in Kansas City with the mental determination of making it his home. He intended to make it his residence on the condition that he could make suitable terms with his employers. In this case the mental determination was accompanied with the physical act of staying upon the farm. The fact that a part of his family and a part of his goods were not moved for a few days should not defeat the physical act and mental intention. The vote was properly counted.

XI. Carlos B. Tomlin voted for contestant and the vote was counted by the court. The father of the voter received employment as clerk in the general land office at Washington, D. C., in which he is still engaged. The son, when sixteen years of age, removed with his father to Washington where he continued to live. When he voted he was twenty-two years of age. The residence of the father was not changed by reason of living in Washington city while engaged in the civil

service of the United States. The residence of the son continued the same as that of the father during the minority of the former, and until he acquired one of his own. He testified that he had never intended to change his residence though he continued to live in Washington after he had attained his majority. The question was one of intention and the finding of the court will not be disturbed.

XII. One ballot voted for contestee contained the word "yes" written under the name of one candidate for prosecuting attorney and the word "no" written under the name of the other candidate for the same office. This ballot was rejected by the court.

It may be that under the mandatory requirements of section 4671, that ballot should not have been counted because of writing the words "yes" and "no" therein. When the statute requires that a ballot, on account of want of conformity to any particular provision of the law, shall not be counted, it is mandatory. As was said in *Gumm v. Hubbard, supra*, sec. 5493 (the same as section 4671) furnishes an absolute rule of evidence. It makes the ballot fraudulent without regard to intent, when it has thereon any writing or printing other than that specified. But, as we have seen, this section was repealed by the act of 1891, and no such prohibition is now contained in the statute.

The words written do not apply to the office of sheriff, which alone is in contest here. We can see no reason for rejecting the entire ballot for the reason that the vote for prosecuting attorney may be left in doubt. *Atkeson v. Lay*, 115 Mo. 538. We are of the opinion that this vote should have been counted for contestee.

XIII. One ballot of Colfax township was numbered six and the number was so recorded on the poll book, but no name was written opposite thereto to

designate the person who presented the ballot.    Nor was any name recorded upon the poll book by which the identity of the voter could be determined.    The court permitted the introduction of parol evidence for the purpose of ascertaining the person who cast the ballot.    The proof being thus made, the vote was counted for contestant.    Contestee assigns this action of the court as error.

In a former paragraph we considered the admissibility of such evidence for the purpose of identifying one whose name was improperly recorded on the poll list.    We held it inadmissible even for that purpose. It follows from what is there said that this ballot was also improperly counted.    If the name of a voter on the poll list can not be identified one can not be supplied.

XIV.    Objection was made by contestee to counting the vote of James Gilling, who voted for contestant. The objection was on the ground that the voter did not reside in the county.    There was some conflict in the evidence, but it tended to prove his residence, and the finding of the court must stand.

XV.    Objection was made that the writ, directing the clerk to recount the ballots, was served by an elisor instead of a sheriff and that the notice to contestee that the clerk would, on the day named, open and recount the ballots, was not served as a writ of summons is required by law to be served.    It appears that the clerk obeyed the commands of the writ without objection to the manner of service and that contestee was present at the opening of the ballot boxes and witnessed the recount.    The objects for which the service of the writ and notice were designed were fully accomplished, and the manner of the service becomes a matter of no importance.

The result of the election therefore is that contestee received 1,821 votes, and contestant received 1,820 votes. Contestee was therefore elected by a majority of one vote.

Judgment reversed with directions to enter judgment for contestee. SHERWOOD and GANTT, JJ., concur; BRACE, C. J., concurs in all but paragraph 6; BURGESS in all but 1, 4, and 7. BARCLAY, J., dissents; ROBINSON, J., absent.