THE STATE OF MISSOURI *ex rel*. F. M. LOWE, Prosecuting Attorney, Relator, v. VERD R. BANTA, Respondent.

Kansas City Court of Appeals, May 3, 1897.

1. **Definitions:** OFFICIAL QUALIFICATIONS: RESIDENT AND INHABITANT: FORENSIC AND LEGISLATIVE USE. The lawmakers in using the terms "resident" and "inhabitant" when prescribing official qualifications, have treated the words as synonymous. "Residence" is the favorite term of the legislators while the courts use the more technical term "domicile."

2. **Domicile:** CHANGE OF: RESIDENCE: INTENTION. Temporary absence from one's usual residence for a series of years does not necessarily cause a loss of residence. Whether a change was effected, depends upon the intention.

3. **Definitions:** INHABITANT: CITIZEN: RESIDENT: The words "inhabitant," "citizen," and "resident" employed in constitutions to define qualifications of electors mean substantially the same thing; and one is an inhabitant, resident, or citizen at the place where he has his domicile or home.

4. **Domicile**: ALDERMAN: FOURTH CLASS CITY: CHANGE OF RESIDENCE. The evidence in this case is reviewed and *held* that the defendant, though he rented and occupied flats in Kansas City, never abandoned his legal residence in the second ward of Westport and was therefore eligible as alderman for said ward.

## Original Proceeding by Quo Warranto.

WRIT DENIED.

*R. Wm. Field* for relator.

(1) At the outset we must take issue with counsel. The defendant set out his claim that the defendant could not lose his domicile in the second ward of Westport until he gained another in some other place, nor until he intended to abandon the second ward of Westport as his domicile. Neither of such propositions is correct. *Town of Jamaica v. Town of Townsend*, 19 Vt. 267; *Whitney v. Inhabitants of Sherborn*, 12 Allen, 111; *Sleeper v. Page*, 15 Gray, 349; *Holmes v. Green*, 7 Gray, 299; *Inhabitants of Jefferson v. Inhabitants of Washington*, 19 Maine, 293; *North Yarmouth v. West Gardiner*, 58 Maine, 207; *The Queen v. Stapleton*, 1 E. & B. (Eng.) 756; *Ford v. Pye*, 9 Com. Pleas Cases (L. R.) 269. (2) The defendant's evidence showing that he is thirty-one years of age and that previous to his establishing his home in Kansas City he had no home elsewhere than at his father's as one of his children, paying neither board nor room rent for remaining there, and having no title or share in the home; he has had no such residence there or right to dwell there by which he could maintain a constructive residence there, while he was maintaining a place of actual residence in Kansas City, the only one he has had where he was master of the premises. *The Queen v. Clossup*, 1 Q. B., cases L. R., 227. (3) It is perfectly clear from the evidence that

when he left his father's house he had no intention of returning there except as a guest, as any child would who had a house of his own. An intention by defendant to occupy a house never occupied by him, but one to be constructed, or to be rented in the second ward of Westport could not be construed as retaining a legal or constructive residence in the second ward of Westport, no matter how *bona fide* his intent in respect thereto may be considered. This exact point has been sustained by the Vermont supreme court. *Town of Jamaica v. Town of Townsend*, 19 Vt. 267; *Durant v. Carter*, 9 Com. Pl. Cases (L. R.) 261. (4) But if an intention to return to his father's, or to a newly built or a rented house in the second ward of Westport would retain his residence there, does the greater weight of the credible evidence justify the conclusion, that he has firmly cherished and still so cherishes such an intention? He must have this degree of proof or be ousted in this case. It would not be sufficient that he have some evidence to that effect or even that the weight of the credible evidence on this subject might be equally balanced in the minds of the court, because he has the burden of satisfying the court as to his possessing the qualification in issue for an alderman of the city of Westport. The state does not have to prove that he does not possess such qualifications to oust him. *State ex rel. v. Giovanoni*, 59 Mo. App. 41; *State ex rel. v. Saxon*, 25 Fla. 342; *Kemp v. People*, 141 Ill. 9. Especially is the burden upon him to show that he yet has a legal residence in the second ward of Westport since he has this flat, the only place that is his own and that he has an absolute right to abide in. *Schooner Amado & Cargo*, 1 Newby (Admiralty Rep.), 401; *Courley v. Courley*, 15 R. I. 572; *In re Steer, deceased*, 3 H. & N. (Eng.) 594; *Bartlett v. City of New York*, 5 Sandf. (N. Y.) 44. (5) The statute prescribing that

aldermen should be citizens of the United States and inhabitants and residents of the city for one year next preceding their election, and residents of the ward from which they are elected (Laws 1895, p. 69, sec. 18, also p. 70, sec. 27) shows that the legislature in employing these words, "citizen," "resident," and "inhabitant" did not use them so comprehensively as to make each contain the same meaning as has been sometimes held, when only one of them was used in a statute. See construction of similar provisions. *The State ex rel. v. Kilroy*, 86 Ind. 118–120; *Durant v. Carter*, 9 L. R. Com. Pl. 261; *The King v. Adlard*, 4 B. & C. 772; *Holmes v. R'y*, 5 Fed. Rep. 523; *Spragins v. Houghton*, 2 Seam. (Ill.) 377; *School District v. Pollard*, 55 N. H. 503; *Ins. Co. v. Town of Hartford*, 3 Conn. 15; *Bank v. City Council*, 3 Hich. (S. C. Law) 348; *Picouet v. Swan*, 5 Mason (U. S.), 35; *Board of Supervisors v. Davenport*, 40 Ill. 197.

*McDougal & Sebree* for defendant.

(1) The sole question in this case is, was the defendant on the sixth day of April, 1897, and when this proceeding was begun, May 6, 1897, a resident and inhabitant of the second ward of the city of Westport, Missouri, within the meaning of these terms as applied to office holders. The words "residents" and "inhabitants" are synonymous terms and mean the same thing as domicile when used as a qualification of enjoying a privilege, or the exercise of a franchise. They are interchangeably and synonymously used all through the constitution of this state in expressing the qualifications necessary for the holding of the different offices provided for by that instrument. As applied to a member of the general assembly, the word "inhabitant" is used; secs. 4 and 6, art. 4, constitution

Missouri, p. 65, R. S. 1889. Governor, "resident;" sec. 5, art. 5, constitution, p. 77. Other executive officers, "resided;" sec. 19, art. 5, constitution, p. 79. Judges supreme court, "citizens;" sec. 6, art. 6. constitution, p. 81. Judges court of appeal, "residents;" sec. 13, art. 6, constitution, p. 82. Judges circuit courts, "qualified voter and resident;" sec. 26, art. 6, constitution, p. 84. Voter, "resident;" constitution, sec. 2, art. 7, p. 89. Military duty, "inhabitants;" sec. 1, art. 13, constitution, p. 107. In the statute judges of the court of appeals must possess the same qualifications as judges of the supreme court; that is, they must be residents and citizens; R. S. 1889, sec. 3285, p. 820. And the statute in defining the qualification of justices of the peace uses the word "inhabitant;" 2 R. S. 1889, sec. 6097, p. 1449. It is evident that the framers of the constitution, as well as the legislature, have used the words "resident," "inhabitant," and "citizen," interchangeably intending to express the same idea. So in the statute providing for cities of the fourth class, as amended in 1895, the qualifications of the mayor are that he must be a "resident" of the city for at least a year preceding his election; sec. 6. p. 67. And in defining the qualification of an alderman, the words "inhabitant" and "resident" are used; sec. 18, p. 69. Then follows the qualifications for officers of the city generally that they must be qualified voters of the state and city; sec. 23, p. 7. Anderson's Dictionary of Law *sub voce*. Jacobs on Domicile, sec. 75; *Englehart v. Burrell*, 66 Mo. App. 117; Cooley, Constitutional Limitations, 754 and 755, and note; *Harvard College v. Gore*, 5 Pick. 370, 377; *Abington v. North Bridgewater*, 23 Pick. 170, 176; *Boland v. City of Boston*, 132 Mass. 89; Mechem on Public Officers, sec. 159. (2) "A change of municipal domicile is a question of fact and intention; on the one hand, mere

absence from the former place of abode does not destroy his domicile there; nor does presence at a place for temporary purpose fix his domicile there." Jacobs on Domicile, sec. 182; *State ex rel. v. Dayton*, 77 Mo. 678; *Scoville v. Glasner*, 79 Mo. 449; *State v. Sanders*, 106 Mo. 188; *Hall v. Schoenecke*, 128 Mo. 661; *Walker v. Walker*, 1 Mo. App. 404; *Ennis v. Smith*, 14 How. 400, 423; *Morris v. Gilmer*, 129 U. S. 315, 328; *People v. Platt*, 50 Hun. 454, 464. (3) The word "resident" or "inhabitant" has a different meaning when applied to a voter or office holder than when applied to attachment proceedings against nonresidents. The ground of the latter proceedings is the inability to serve the debtor personally in the state, and whether the absence is permanent or temporary, voluntary or involuntary, the reason for giving the creditor this remedy is the same. *In the matter of Thompson*, 1 Wend. 45; *People v. Platt*, 50 Hun. 454, 459; *Johnson v. Smith*, 43 Mo. 499; *Chariton County v. Moberly*, 59 Mo. 238.

GILL, J.—This is an original proceeding in *quo warranto*, instituted in this court, whereby it is sought to oust the defendant Banta from the office of alderman for the second ward of Westport, a city of the fourth class. Banta's eligibility to the office is attacked on the alleged ground that at his election in April last he was not, and is not now, a resident or inhabitant of Westport, or of the ward he represents.

The qualifications for aldermen in cities of the fourth class are set out in sections 18 and 23, Laws 1895, pages 69 and 70; the first providing that "no person shall be an alderman unless he be at least twenty-one years of age, a citizen of the United States, and an inhabitant and resident of the city for one year next preceding his election, and a resident of the ward from which he is elected;" and said section 23 provides that

"no person shall be elected or appointed to any office who shall at the time be in arrears for any unpaid city taxes, or forfeiture or defalcation in office, or who is not a resident of the city."

On the part of the prosecution it is claimed, that a few months before the last spring election in Westport, Banta moved from said second ward and from said city to, and has ever since resided in, Kansas City. Defendant denies that he changed his legal residence, and alleges that he only took temporary quarters for the winter and spring at Kansas City, and that his permanent abode remained at Westport.

Without detailing the evidence submitted to us, we find the facts to be, in substance, as follows: Defendant Banta, a young man thirty-one years of age, has been practically reared at his father's house in Westport. While residing with his father he, in late years, occupied a room which was furnished at the young man's expense. He here made his permanent home, and during the last five years has served as alderman from the second ward, being elected, as already stated, the third time at the last city election. In June last Banta was married, but continued as before to occupy the room at his father's (and which he had furnished), until in November, when he and his wife began the occupancy of a small four-room flat in Kansas City. This was, however, for only a temporary purpose, since the evidence clearly shows that he then had in view the erection of a house on a lot he owned near his father's, and which he intended as his future residence. He also retained the furnished room at his father's, where some of his clothing was kept, and in which he and his wife lodged from one to three nights in every week. The uncontradicted evidence also shows that during the entire time Banta and his wife held the flat, he continuously claimed Westport as his

home and permanent residence; he received his mail from that postoffice; refused to list his personalty for taxation in Kansas City; attended every council meeting, performed committee work; and, in fact, devoted quite all his time to the attention of his matters, personal and official, at Westport.

Before going into the Kansas City flat, Banta consulted the city attorney of Westport, as well as another lawyer who had been mayor, telling them of the proposed occupancy of the flat, and that he only desired to use it for the winter and spring, and that he did not intend to change his residence, and they both advised him that such temporary occupancy would not affect his citizenship in Westport. In addition to all this the name of the defendant seems to have been presented to the authorities at Washington for appointment as postmaster at Westport, and the application, numerously signed, is now on file.

These and other matters detailed in the evidence satisfactorily prove that the occupancy of the Kansas City flat was only temporary, and that Banta, all the time, considered Westport his permanent habitation and residence. Nor is there any evidence to the contrary, save and except the circumstance that the flat was taken under a written lease for a year. But this is counteracted by Banta's undisputed testimony that he had an understanding with the lessor that the flat was only taken for temporary use and might be surrendered at the close of the winter or spring.

In view, now, of these facts, we are clearly of the opinion that at the date of the defendant's election, prior thereto and since, he was, and continued to be, an inhabitant and resident of the second ward of the city of Westport. Habitancy and residence, as used in the statute before quoted to define the qualification of aldermen for cities of the fourth class, have the

same meaning, and both indicate the same degree of permanency and fixedness ás domicile. Through the efforts of the defendant's industrious counsel, we have been cited to the interchangeable use of these terms as found in our state constitution and statute laws. For example, the governor, in addition to other qualifications, must be a *"resident* of this state seven years next before his election." Sec. 5, art. 5, constitution. As to other executive officers, it is required by section 19, same article, that they "shall have *resided* in this state at least five years next before their election;" so with the judges, they shall be *"residents,"* "citizens," "qualified voters and residents;" "all able bodied male *inhabitants* of this state (possessing, too, other qualifications) shall be subject to military duty." Sec. 1, art. 13. Under the statute, section 6097, a justice of the peace must have been an inhabitant of this state twelve months, etc. The qualification of mayor for cities of the fourth class (to which Westport belongs) is that he shall be "a resident of the city at the time of and for at least one year next preceding his election." Sec. 6, p. 67, Laws 1895. And in the same statute, as already quoted, the alderman must, as required by section 18, be an *inhabitant and resident* of the city for a year, and a resident of his ward; while by section 23, the general qualification of all elective or appointive officers, including aldermen, of the city, are required to be *residents* of the same.

These instances sufficiently show that our lawmakers, in using the terms *residents* and *inhabitants*, when prescribing official qualifications, have treated such words as synonymous. And while "residence" is the favorite term used by legislators in prescribing the eligibility of public officials, the courts have used the more technical term of *domicile;* and in such

DEFINITIONS: official· qualifications: resident and inhabitant: forensic and legislative use.

cases have generally spoken of change of residence as a change of domicile. See *State ex rel. Ramey v. Dayton*, 77 Mo. 678; *State v. Sanders*, 106 Mo. 188; *Chariton County v. Moberly*, 59 Mo. 238, 242.

In *State v. Sanders, supra*, in treating the question of the eligibility of a special judge, the court says: "It does not appear that when he 'moved' to Oregon his intentions were such as to change his residence from this state to that. A mere absence from this state, without an intention of making his residence elsewhere did not effect a change of residence. *Scoville v. Glasner*, 79 Mo. 449." So, in the *Dayton* case above cited, the court, while speaking in reference to a case somewhat similar to this, uses the following language: "To give him (the St. Joseph alderman) a domicil in Kansas City, two things must concur. It is not sufficient that he is there a greater portion of his time; his stay there must be with the intention of making it his *home or domicile*. Physical stay or residence in any particular place will not, of itself, constitute a domicile. The physical fact of staying must be accompanied with the mental determination of making a home or domicile in the place where the party stays or abides."

In *Hall v. Schoenecke*, 128 Mo. 661, it is said that: "A temporary absence of a person from his usual residence, through a series of years, does not necessarily cause a loss of such residence. Whether a change was effected in any case depends upon the intention with which the removal from the former residence was made. McCrary on Elections [3 Ed.], sec. 62." To same effect, see, also, *Lankford v. Gebhart*, 130 Mo. 621; Jacobs on Domicile, secs. 75, 182; 10 Am. and Eng. Ency. Law, p. 770, and notes.

DOMICILE: change of: residence: intention.

"A person's residence is the place of his domicile, or the place where his habitation is fixed without any

present intention of removing therefrom. The words 'inhabitant,' 'citizen,' and 'resident,' as employed in different constitutions to define the quali-

DEFINITIONS: inhabitant: citizen: resident.

fications of electors, mean substantially the same thing; and one is an inhabitant, resident, or citizen at the place where he has his domicile or home." Cooley, Const. Lim. [6 Ed.], 754.

In our opinion, then, Banta's residence, permanent abode or habitation was all the time in the second ward of the city of Westport. He never ·abandoned this legal residence; his stay at the Kansas

DOMICILE: alderman: fourth class city: change of residence.

City flats was for a mere temporary purpose; he all the time retained his domicile at his father's house in Westport; he had there a furnished room held for his use and occupancy until his own house should be erected; there was no change of the residence required by the statute, and hence this action to oust the defendant must fail.

The other judges concurring, a judgment will be entered for the defendant.